UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SUN CAPITAL PARTNERS, INC.       Case No. _____

       Plaintiff,

v.

TWIN CITY FIRE INSURANCE COMPANY,

       Defendant,

_____

## COMPLAINT

Plaintiff, Sun Capital Partners, Inc. ("SCP"), on behalf of Sun Capital Securities Fund, LP, Sun Capital Securities Offshore Fund, Ltd., SCSF Mervyn's (US) LLC, SCSF Mervyn's (Offshore), Inc. and Sun Capital Securities Management, LLC (collectively, "Sun Capital"), sues Defendant, Twin City Fire Insurance Company ("Twin City"), and alleges:

### NATURE OF THE ACTION

1.    This is an action seeking damages for breach of contract arising out of the failure of Twin City to comply with its defense and indemnity obligations under the Policy described below.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as this is a suit between parties that are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b)(2) because the insurance policy at issue was delivered to SCP within this judicial district and a substantial

part of the acts or omissions giving rise to this action occurred within this judicial district.

## THE PARTIES

4. SCP is incorporated under the laws of Florida and has its principal place of business in Boca Raton, Florida. SCP is listed as the Insured Organization under the primary and excess insurance policies (described below) that are at issue in this action.

5. Twin City is incorporated under the laws of Indiana and has its principal place of business in Hartford, Connecticut. Twin City is a foreign corporation authorized by the Florida Department of Financial Services to transact business and issue insurance coverage in the State of Florida.

## RELEVANT NONPARTIES

6. Sun Capital Securities Fund, LP ("SCSF") is organized under the laws of Delaware and has its principal address in Florida.

7. SCSF was named as a defendant in the underlying litigations (described below) that are at issue in this case.

8. Endorsement No. 1 of the primary insurance policy (described below) at issue in this action expressly includes SCSF as an Insured Organization.

9. Sun Capital Securities Offshore Fund, Ltd. ("Offshore Fund") is organized under the laws of the Cayman Islands and has its principal address in Florida.

10. Offshore Fund was named as a defendant in the underlying litigations that are at issue in this case.

11. Endorsement No. 1 of the primary insurance policy at issue in this action expressly includes Offshore Fund as an Insured Organization.

12. <u>SCSF Mervyn's (US), LLC</u> ("SCSF Mervyn's (US)") is organized under the laws of Delaware and has its principal place of business in Florida.  SCSF owns all of the equity in SCSF Mervyn's (US).

13. SCSF Mervyn's (US) was named as a defendant in the underlying litigations that are at issue in this case.

14. SCSF Mervyn's (US) is an Insured Organization under the primary insurance policy at issue in this action.

15. <u>SCSF Mervyn's Offshore, Inc.</u> ("SCSF Mervyn's Offshore") is organized under the laws of Delaware and has its principal place of business in Florida.  Offshore Fund indirectly owns all of the equity in SCSF Mervyn's Offshore.

16. SCSF Mervyn's Offshore was named as a defendant in the underlying litigations that are at issue in this case.

17. SCSF Mervyn's Offshore is an Insured Organization under the insurance policy at issue in this action.

18. <u>Sun Capital Securities Management, LLC</u> ("Sun Capital Securities Management") is organized under the laws of Delaware and has its principal place of business in Florida.

19. Sun Capital Securities Management was named as a defendant in the underlying litigations that are at issue in this case.

20. Endorsement No. 1 of the primary insurance policy at issue in this action expressly includes Sun Capital Securities Management as an Insured Organization.

## **THE POLICIES**

21. <u>The Twin City Excess Policy</u>:  Twin City issued Universal Excess Policy No. DB 0215592 to SCP as the Named Organization, effective from December 31, 2007 to December 31, 2008 (the "Twin City Excess Policy").  A copy of the Twin City Excess Policy is attached as

Exhibit A.

22. The Twin City Excess Policy has a $10,000,000 million limit of liability in the aggregate. (Declarations Item C. Limit of Liability)

23. Under the Twin City Excess Policy, Twin City agreed to provide "the **Insured(s)** with insurance during the Policy Period which is in excess of the total limits of liability and any retention/deductible under all Underlying Insurance, as set forth in Item D of the Declarations, whether collected or not." (Section I.)

24. The HCC Primary Policy: Houston Casualty Company Policy No. H707-60661, effective from December 31, 2007, to December 31, 2008, is listed as the primary policy under Item D. Schedule of Underlying Insurance of the Twin City Excess Policy (the "HCC Primary Policy"). A copy of the HCC Primary Policy is attached as Exhibit B.

25. The HCC Primary Policy has a $10,000,000 limit of liability in the aggregate.

26. The applicable retention under the HCC Primary Policy is $250,000.

27. Under the Twin City Excess Policy, liability attaches only "after the Primary and Underlying Excess Insurers shall have paid the full amount of their respective liability …." (Section II.A)

28. The limit of liability under the HCC Primary Policy has been exhausted by the payment of Loss to Sun Capital in connection with the underlying litigations described below.

29. The Twin City Excess Policy "follows form" to the HCC Primary Policy. Specifically, the Twin City Excess Policy states:

This endorsement modifies insurance provided under the following:

**UNIVERSAL EXCESS POLICY**

Section III., Primary and Underlying Insurance, paragraph A., is deleted and replaced with the following:

>This policy is subject to the same representations, terms, conditions, definitions, exclusions and endorsements (except as regards the premium, the amount and limits of liability, and duty to defend, and except as otherwise provided herein) as are contained in or as may be added to the Primary Policy, together with all the representations, terms, conditions exclusions and limitations contained in or added by endorsement to any Underlying Excess Policy (ies).  In no event, shall this policy grant broader coverage than is provided by the most restrictive Primary or Underlying Excess Policy(cies).

(Endorsement No. 7).

30. Pursuant to the terms of the HCC Primary Policy, Twin City agreed to "pay on behalf of the **Insured Organization Loss**, which the **Insured Organization** is legally obligated to pay and which arises from any **Claim** first made against the **Insured Organization** during the **Policy Period** for a **Wrongful Act**."  (Section I.C(3))

31. Under the HCC Primary Policy, **Insured Organization** means, in relevant part:

> (1) the entity listed in Item A. of the Declarations of this Policy;
>
> (2) those entities listed in Endorsement No. 1 to this Policy;
>
> (3) any **Subsidiary** thereof; and
>
> (4) any entity formed by the **Insured** for the sole purpose of the performing **Private Equity Activities** on behalf of any entity listed in sections (1) and (3) of this endorsement
>
> . . .

(Endorsement No. 8).

32. The HCC Primary Policy defines **Loss** as:

>**Loss** means damages, settlement and **Costs, Charges and Expense** incurred by any of the **Insureds**, including punitive, exemplary or multiplied damages; provided, however, that such punitive, exemplary or multiplied damages are insurable pursuant to any applicable law.  (Insurers agree not to contest the application of the law of, or removal of the litigation to, any jurisdiction that may provide for the insurability of punitive, exemplary or multiple damages if such law can be demonstrated as applicable by the Insureds).  Loss shall not include:
>
>(1) taxes, criminal or civil fines or penalties imposed by law;

> (2) matters deemed uninsurable under the law pursuant to which this Policy shall be construed;
>
> (3) any amounts paid to or on behalf of the **Insured Persons** as indemnification from a **Portfolio Company** under any applicable agreement or as required or permitted by statute, by-laws or charter of the **Portfolio Company**, or any amounts paid to or on behalf of the **Insured Persons** under any insurance coverage provided by the **Portfolio Company**;
>
> (4) any amount allocable to uncovered **Loss** under this Policy; or
>
> (5) the return of any contribution of capital to any **Insured Person.**

(Endorsement 10).

> 33. The HCC Primary Policy defines **Costs, Charges and Expenses** as follows:
>
> **C.** **Costs, Charges and Expenses** means reasonable and necessary legal fees and expenses (including expert fees) and costs of attachment or similar bonds incurred by the **Insureds** in the investigation of or defense of any **Claim**, but shall not include:
>
> > (1) directors' fees, salaries, wages, overhead or benefit expenses associated with directors, officers or employees of the **Insured Organization** or the **Portfolio Company**, or
> >
> > (2) any amounts incurred in the defense of any **Claim** for which any other insurer has a duty to defend.

(Endorsement No. 7).  Loss, as defined by the HCC Primary Policy, thus includes defense costs incurred in defense of a Claim.

34. Under the HCC Primary Policy, **Wrongful Act** means, in part, "with respect to Insuring Agreement Coverage C, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Insured Organization** …."  (Endorsement No. 16).

35. Under the HCC Primary Policy, **Claim** is defined, in part, as "... any civil, judicial administrative, regulatory or arbitration proceeding (including any appeal therefrom) or formal or informal investigation initiated against any of the **Insureds** …."   (Endorsement No. 6).

192138_1                                              6

36. The HCC Primary Policy contains the following clause concerning allocation:

**VII.  Allocation**

If there can be an agreement on **Costs, Charges and Expenses**, the Insurer shall advance on a current basis **Costs, Charges and Expenses** allocated to covered **Loss**.  If there can be no agreement on an allocation of **Loss**:

A. no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

B. The Insurer shall advance on a current basis **Costs, Charges and Expenses** which the Insurer reasonably believes to be covered under the Policy until a different allocation is negotiated, arbitrated or judicially determined; and

C. The Insurer, if requested by the **Insured Person(s)** or the **Insured Organization**, shall submit such dispute to binding arbitration.  The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the Insured Person(s) or the Insured Organization, one arbitrator selected by the Insurer, and a third independent arbitrator selected by the first two arbitrators.

Any negotiated, arbitrated or judicially determined allocation of **Costs, Charges and Expenses** on account of a Claim shall be applied retroactively to all **Costs, Charges and Expenses** on account of such Claim, notwithstanding any prior advancement to the contrary.  Any allocation or advancement of **Costs, Charges and Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to allocation of other **Loss** on account of such **Claim**.

(Endorsement 30).

37. The HCC Primary Policy also contains the following Insured Organization authorization clause:

E.  **Insured Organization Authorization Clause**

By acceptance of this Policy, the **Insureds** agree that the entity identified in Item A. of the Declarations will act on their behalf with respect to the giving of all notices to the Insurer, the receiving of notices from the Insurer, and the payment of the premium and the receipt of any return premium.

(Section X.E)

192138_1

7

## THE UNDERLYING LAWSUITS AND CLAIMS

38. <u>The 2008 Litigation</u>: On September 2, 2008, the Official Committee of Unsecured Creditors of Mervyn's, on behalf of Mervyn's, LLC, Mervyn's Holdings, LLC and Mervyn's Brands, LLC ("collectively, Mervyn's"), commenced an action in the United States Bankruptcy Court for the District of Delaware against 43 defendants, including Sun Capital (Adv. Pro. No. 08-51402 (KG)) ("the 2008 Litigation").

39. On or about March 25, 2010, Mervyn's filed a Second Amended Complaint in the 2008 Litigation, which became the operative pleading as of the date the 2008 Litigation settled.

40. In the Second Amended Complaint, Mervyn's sought, among other things, to avoid and recover certain transfers made in connection with the sale of Mervyn's by Target Corporation in 2004 (the "2004 Transaction") and damages for alleged breaches of fiduciary duties. A copy of the Second Amended Complaint is attached as Exhibit C.

41. In the Second Amended Complaint, Mervyn's asserted the following counts against Sun Capital for avoidance of transfer of real property assets and recapture of value pursuant to 11 U.S.C. §§ 544(b) and 550; and as applicable, the Uniform Fraudulent Transfer Act (the "UTFA") or the Uniform Fraudulent Conveyance Act ("UFCA"): (1) Count I; (2) Count II; (3) Count III; (4) Count IV; (5) Count V; (6) Count VI; (7) Count VII; and (8) Count VIII.

42. The Second Amended Complaint asserted the following counts against Sun Capital for avoidance of transfers of the transaction fees paid to or for the benefit Sun Capital and recapture of value under 11 U.S.C. §§ 544(b) and 550; and as applicable, the UTFA or the UFCA: (9) Count XVIII; (10) Count XIX; (11) Count XX; and (12) Count XXI.

43. The Second Amended Complaint also asserted the following counts against Sun Capital for avoidance of rent payments (so-called "notional rent"), occupancy cost increases and

other transfers and recapture of value under 11 U.S.C. §§ 544(b) and 550; and as applicable, the UTFA or the UFCA: (1) Count XXII; (2) Count XXIII; (3) Count XXIV; and (4) Count XXV.

44. The Second Amended Complaint asserted Count XXXI against Sun Capital (and other covered entities) for avoidance and recovery of preferential transfers under 11 U.S.C. §§ 547 and 550.

45. In support of Counts 1-8, 18-25 and 31, Mervyn's alleged, among other things, that following the acquisition of Mervyn's, Sun Capital completely dominated Mervyn's with respect to the various transactions and transfers described in the Second Amended Complaint.

46. According to Mervyn's, Sun Capital selected and installed board members, employees and/or consultants to oversee Mervyn's and advance the interests of Sun Capital to the detriment of Mervyn's. Mervyn's alleged that these "insider" directors and/or employees, which Sun Capital controlled and dominated, caused Mervyn's to, among other things, enter into the 2004 Transaction and transfer its real estate for little or no consideration, enter into leases (as more fully described in the Second Amended Complaint) at substantially increased rents and to pay so-called "notional rent" in the form of distributions for the benefit of Sun Capital, to pay management fees, transaction fees and other fees for the benefit of Sun Capital and to make distributions and other payments for the benefit of Sun Capital.

47. Mervyn's alleged that the 2004 Transaction and the transactions and transfers that followed only benefitted Sun Capital and were self-dealing transactions imposed upon Mervyn's by Sun Capital.

48. In connection with Counts 1-8, 18-25 and 31, Mervyn's requested that the Court enter judgment in its favor either avoiding the transfers of real property assets, transactions fees, rent payments, occupancy cost increases and other transfers, or alternatively, awarding Mervyn's monetary damages against Sun Capital, jointly and severally, in an amount to be determined at

trial.

49. Mervyn's also asserted Count XXVI against Sun Capital for Breach of Fiduciary Duty; Self Dealing. In support of this count, Mervyn's alleged, among other things, that the private equity sponsors and owners, including Sun Capital, engaged in self-dealing and improperly exercised their control and dominion over Mervyn's to cause Mervyn's to approve the 2004 Transaction, which stripped away Mervyn's real estate assets for little or no benefit, enter into the Count 22-25 transfers and entered into economically disadvantageous transactions and leases (as described in the Second Amended Complaint), which enhanced the interests of Sun Capital at the expense and to the detriment of Mervyn's and its creditors. As a result of the alleged breaches of fiduciary duties, Mervyn's contended that it incurred substantial damages and sought to hold Sun Capital jointly and severally liable in an amount to be determined at trial.

50. Sun Capital incurred substantial attorney's fees and costs constituting Costs, Charges and Expenses in defending against the 2008 Litigation, all of which constitute covered Loss under the HCC Primary Policy.

51. <u>The 2009 Litigation</u>: On or about April 7, 2009, the Official Committee of Unsecured Creditors of Mervyn's Holdings, LLC filed an adversary proceeding in the United States Bankruptcy Court for the District of Delaware (Adv. Proc. No. 09-50887) ("the 2009 Litigation") seeking, among other things, to avoid certain alleged preferential transfers and/or to recharacterize certain secured claims as equity.

52. The 2008 and 2009 Litigations constitute a "Claim" as that term is defined in the HCC Primary Policy.

53. Twin City adopted Houston Casualty Company's position that the 2008 and 2009 Litigations constitute interrelated claims under the HCC Primary Policy.

54. <u>The Settlement</u>: On or about October 5, 2012, the 2008 and 2009 Litigations settled for an amount greatly exceeding the combined limits of the HCC and Twin City Policies. In connection with the settlement, Sun Capital incurred covered Loss, as that term is defined by the HCC Primary Policy and applicable law.

**THE INSURER'S RESPONSE**

55. By letter dated January 22, 2009, Twin City acknowledged receiving notice of the 2008 Litigation and reserved its right to contest coverage.

56. In its January 22, 2009, letter, Twin City acknowledged receipt of the initial complaint filed by Mervyn's in the 2008 Litigation and concluded that four of the five causes asserted in the initial complaint were not subject to coverage. Twin City, therefore, "agree[d] to attribute only 20% of the legal fees and expenses incurred by the Insured(s) … towards the exhaustion of the underlying $250(k) retention and underlying $10M HCC Policy."

57. On January 10, 2011, Twin City issued a second reservation of rights letter, informing Sun Capital that it had concluded that the Twin City Excess Policy provided limited coverage for the 2008 Litigation and no coverage for the 2009 Litigation. In that letter, Twin City erroneously determined that, since the breach of fiduciary count of the 2008 Second Amended Complaint represented the sole potentially covered count of the 18 counts asserted against Sun Capital (and other insured entities), it was entitled to allocate based upon the relative legal exposure between covered and uncovered Loss. Twin City viewed the potential exposure arising from each count to be relatively similar, and thus, concluded that an appropriate allocation for the breach of fiduciary duty count would be approximately five percent.

58. On November 2, 2012, Twin City issued a third reservation of rights letter, in which it erroneously concluded that the Twin City Excess Policy provides no coverage for the settlement of the 2008 Litigation or defense expenses incurred by other law firms who acted on

Sun Capital's behalf in accordance with a joint defense effort among the principal defendants in the 2008 Litigation (the "Team Fees and Expenses").

59. Twin City improperly denied coverage for the settlement of the 2008 Litigation because it concluded that the only damages sought in the 2008 Litigation were rescissionary in nature and thus did not constitute insurable Loss under the HCC Primary Policy and Sun Capital purportedly failed to obtain its consent prior to engaging in settlement negotiations and entering into settlement agreements as required under the HCC Primary Policy.

60. Twin City denied coverage for the Team Fees and Expenses incurred on behalf of Sun Capital's defense because the fees were allegedly incurred without its consent.

61. The Team Fees and Expenses substantially benefited Sun Capital and by extension Twin City, and were incurred with the actual or constructive knowledge of Twin City and without objection. Other insurers, including HCC have agreed to pay such Team Fees and Expenses.

62. With respect to defense expenses incurred by Sun Capital's counsel, Kirkland & Ellis, LLP (the "K&E Fees"), Twin City acknowledged coverage, but concluded that because most of the exposure at issue in the 2008 Litigation was in its opinion attributable to the non-covered fraudulent transfer counts, an appropriate allocation, based on Sun Capital's relative legal exposure, would be less than the 55 percent allocation of fees agreed to between Houston Casualty and Sun Capital in August 2011. Twin City thus rejected the allocation of the K&E Fees incurred by Sun Capital and paid by Houston Casualty.

63. Twin City's denial of coverage for the 2008 Litigation is at odds with the position taken in its January 22, 2009, letter, in which it concluded, among other things, that the breach of fiduciary duty claim asserted in the 2008 Litigation was not excluded under the HCC Primary Policy.

64. Moreover, contrary to Twin City's position, Sun Capital at all times was cooperative and kept all the insurers, including Twin City, apprised of ongoing settlement negotiations.

65. No insurer, other than Twin City, has denied coverage based on a purported failure to obtain the insurers' consent prior to entering into settlement negotiations.

## CONDITIONS PRECEDENT

66. Sun Capital made timely payment of all premiums and otherwise satisfied all conditions precedent for coverage under the Twin City Excess Policy. Alternatively, all conditions precedent to this action have been waived or excused.

67. Twin City's actions have compelled Sun Capital to retain the undersigned counsel to represent its interests in this action, and Sun Capital has agreed to pay counsel a reasonable fee for their services.

## COUNT I – BREACH OF CONTRACT

68. Sun Capital realleges paragraphs 1 through 45.

69. The Twin City Excess Policy is an enforceable contract under the laws of the state of Florida.

70. The insurance contract obligated Twin City to perform certain duties, including the duty to timely pay Loss and to seek allocation in good faith and only if required by the Policy.

71. Twin City failed to perform its duties under the contract, and thus breached the contract, by those acts and omissions alleged above, including without limitation its refusal to make any payment, much less full and timely payment of Sun Capital's defense costs and other covered Loss.

72. As a direct and proximate result of that breach, Sun Capital has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff, Sun Capital Partners, Inc., demands judgment against Defendant, Twin City Fire Insurance Company, for the full amount of covered loss; pre- and post-judgment interest thereon; attorney's fees pursuant to FLA. STAT. § 627.428; costs; and any other relief this Court deems equitable, just, and proper.

### JURY DEMAND

Sun Capital Partners, Inc. requests a trial by jury of all issues so triable as of right.

Dated: December 20, 2012

Respectfully submitted,

s/s Maria R. Caldera
**R. Hugh Lumpkin**, Esquire
Florida Bar No. 308196
hlumpkin@vpl-law.com
**Maria R. Caldera**, Esquire
Florida Bar No. 058323
mcaldera@vpl-law.com
**Heather J. Gorin**, Esquire
Florida Bar No: 084219
hgorin@vpl-law.com
Ver Ploeg & Lumpkin, P.A.
100 S.E. 2nd Street – 30th Floor
Miami, FL  33131-2151
Tel: 305-577-3996
Fax: 305-577-3558
*Counsel for Plaintiff*