UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO. 12-81397 CIV-MARRA/MATTHEWMAN

SUN CAPITAL PARTNERS, INC.

          Plaintiff,

v.

TWIN CITY FIRE INSURANCE COMPANY,

          Defendant,

_____/

## SUN CAPITAL'S MOTION FOR CHOICE OF LAW DETERMINATION

Plaintiff, Sun Capital Partners, Inc. ("Sun"), pursuant to S.D. Fla. L.R. 7.1, hereby moves for a determination that Florida law applies to the substantive issues in this insurance coverage action against Defendant, Twin City Fire Insurance Company ("Twin City"), and states:

## INTRODUCTION

This is an action for breach of contract arising out of Twin City's failure to comply with its defense reimbursement and liability obligations under an excess "follow form" insurance policy ("Policy") issued to Sun in connection with a lawsuit originally captioned *Mervyn's, LLC v. Lubert-Adler & Klaff Partners, LP, et al.*, No. 08-51402 (Bankr. D. Del. 2008) ("Underlying Lawsuit").  Sun's primary insurance carrier, Houston Casualty Company ("HCC"), paid the full

amount of its liability for the Underlying Lawsuit thereby causing Twin City's Policy obligations to attach, which it has declined to honor.[1]

Twin City has attempted to thwart payment to Sun by every device it can contrive, including arguing that Florida law, which is beneficial to Sun, should not be applied even though Sun is a Florida corporation with its principal place of business in Boca Raton, Florida, and both the primary HCC policy and the excess Twin City Policy were issued for delivery to Sun in Florida.[2] These facts are sufficient under governing law to lay any dispute over which law applies to rest.

In the Southern District of Florida, delivery of the policy generally constitutes the "last act" necessary to execute a contract under the applicable *lex loci contractus* rule. Because the Policy was delivered to the named insured at the Florida address listed on the Declarations page, the factors governing this Court's choice of law analysis require application of Florida law. Twin City contends that New York law controls solely because it chose to deliver one copy of the insurance binder to Sun's national broker, Marsh, at its New York office, though the binder could also have been delivered to any of Marsh's myriad national offices. Twin City also ignores the fact that it simultaneously delivered another copy of the insurance binder to Marsh, Sun's agents, at its Florida office after receiving an authorization to bind coverage executed by Sun in Florida. Under these circumstances, the issue is not close; for sound policy and legal reasons, Florida law applies to the substantive issues in this insurance coverage action.

---

[1] The HCC policy had a $10 million limit, though some monies were paid out of that policy for other unrelated litigation matters involving Sun.

[2] Although the primary policy typically governs the choice of law analysis for a follow-form excess policy like Twin City's, *Lee v. Interstate Fire & Cas. Co.*, 86 F.3d 101, 103 (7th Cir. 1996), that question need not be decided here because both policies were issued for delivery in the same manner.

## ARGUMENT

### A.  Choice of Law Rules of the Forum State

"In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state."  *Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir.1996).  Florida generally applies the rule of *lex loci contractus* in determining what law applies in contract claims.  *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006); *see also Club Caribe Condo., Ass'n, Inc. v. Travelers Excess and Surplus Lines Co.*, 2012 WL 529972, at *2 (S.D. Fla. 2012).  In *Roach*, the Florida Supreme Court stated that it considered and rejected the significant relationships test for contracts set forth in *Sturiano v. Brooks*, 523 So. 2d 1126, 1128–29 (Fla.1988).  *Roach*, 945 So. 2d at 1163.  Rather, the court reaffirmed that *lex loci contractus* controls.  As applied to insurance contracts, "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *Id.*

### B.  Florida Law Applies Under Lex Loci Contractus

Under the *lex loci contractus* rule, the law of the state where the Policy was executed should apply to the substantive issues in this insurance coverage dispute.  *See* Section A, *supra.* The place where the policy was executed is "the place where the last act necessary to complete the contract was done."  *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1119 (11th Cir. 1990) (quoting *Jemco, Inc. v. United Parcel Service, Inc.*, 400 So. 2d 499, 500 (Fla. 3d DCA 1981)); *see also Sturiano*, 523 So. 2d at 1129-30.  This Court has held that delivery of the policy generally constitutes the "last act" necessary to execute a contract.  *See Creative Hospitality Ventures, Inc. v. U.S. Liability Ins. Co.*, 655 F. Supp. 2d 1316, 1324 (S.D. Fla. 2009) (under Florida law, "[t]he place where the contract was executed is 'generally considered to be the place

where the policy is delivered'") (quoting *Adolfo House Dist. Corp. v. Travelers Prop. and Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1335 (S.D. Fla. 2001)).

In *Roach*, *supra.*, though invited to abandon what has been described as a rigid rule, the Supreme Court reaffirmed the continued vitality of *lex loci contractus*:

> We reasoned that "[w]hen parties come to terms in an agreement, they do so with the implied acknowledgment that the laws of that jurisdiction will control absent some provision to the contrary."  We concluded that to abandon this principle and permit a party to change or modify contract terms by moving to another state would unnecessarily disrupt the stability of contracts.

945 So. 2d at 1164 (discussing the Court's prior decision in *Sturiano*, *supra.*) (internal citations omitted)).  These principles, as we discuss below, resonate with why Florida law must be applied to the resolution of this action.

The Declarations page of the Twin City Policy lists the Insured as Sun Capital Partners, Inc., with a principal address in Boca Raton, Florida, and the Policy Period from December 31, 2007 to December 31, 2008, "at the address stated [above]."  [D.E. 1-1, p. 1 of 19].  In the absence of any facts to the contrary, the insured's address on the face of the policy is sufficient to establish the location where the policy was delivered and executed for purposes of determining choice of law.  *See Club Caribe*, 2012 WL 529972, at *4; *Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1331-32 (S.D. Fla. 2006) ("The parties do not dispute that Florida law applies to the interpretation of the insurance contract at issue, as the policy was issued and delivered to [the insured], a Florida company, in Florida.").  This Court in *Club Caribe* also relied on the policy's "Sole Agent Provision," which stated that the insured "shall act on behalf of all insureds with respect to the giving and receiving of notice of cancellation or nonrenewal." 2012 WL 529972, at *1.  The Twin City Policy includes a similar provision in the Florida Nonrenewal Endorsement,

which states: "Any notice of cancellation or non-renewal will be mailed or delivered to the **Insured's** last mailing address known to the **Insurer**."  [D.E. 1-1, p. 13 of 19].

Twin City contends in its recent Supplemental Response to Sun's Motion to Quash Subpoenas and/or Motion for Protective Order that New York law controls because "[t]he Policy was issued by Twin City to Sun's brokers in New York."  [D.E. 72, p. 2, n. 2] (citing *CNL Hotels & Resorts, Inc. v. Houston Cas. Co.*, 505 F. Supp. 2d 1317, 1320 (M.D. Fla. 2007)).[3]  Even if this Court were to accept Twin City's argument and disregard the Southern District case law recognizing place of delivery of the *policy* as the place where the policy was executed under *lex loci contractus*,[4] the binder here was simultaneously delivered to Sun's national broker and agent, Marsh, at both its New York *and Florida* offices.  *See* Email from Ho-Tay Ma attaching Policy Binder, dated December 28, 2007 [Ex. A].[5]  Furthermore, the Authorization to Bind coverage was executed by Sun in Florida the day before the binder was issued.  *See* Email from Mark Kuchenrither, dated December 27, 2007, attaching Authorization to Bind [Ex. B].

---

[3] Although *CNL* and some other Middle District cases, such as *In re Celotex Corp.*, 194 B.R. 668 (M.D. Fla. 1996), stress delivery of the insurance binder as the "last act" in the formation of the insurance contract, the Southern District has not followed this suggested resolution. *See, e.g.*, *Creative Hospitality*, 655 F. Supp. 2d at 1324; *Club Caribe*, 2012 WL 529972, at *4; *Waserstein*, 424 F. Supp. 2d at 1331-32.  Other Middle District decisions are in line with the Southern District's emphasis on delivery of the policy itself.  *See, e.g.*, *CAE USA, Inc. v. XL Ins. Co. Ltd.*, 2011 WL 1878160, at *2 (M.D. Fla. 2011) (holding Canadian law applicable under *lex loci contractus* because insurance policy was delivered to insured in Canada); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Beta Const. LLC*, 816 F. Supp. 2d 1256, 1260 (M.D. Fla. 2011) (recognizing "several different factors that can be considered to ascertain where the contract was executed or where the last act necessary for completion occurred," and that "courts have relied on where the insurance policy was delivered to determine choice of law").

[4] *See Creative Hospitality*, 655 F. Supp. 2d at 1324; *Club Caribe*, 2012 WL 529972, at *4; *Waserstein*, 424 F. Supp. 2d at 1331-32.

[5] We have redacted information contained within Exhibits A and B, as they contain sensitive financial information, irrelevant to issues addressed in this motion.

CASE NO. 12-81397 CIV-MARRA/MATTHEWMAN

Accordingly, whether the Court looks to delivery of the policy or delivery of the binder to determine where the policy was executed, Florida is the answer.

Applying *lex loci contractus*, Florida law should govern questions of coverage arising from the policies issued for delivery in Florida. *See Industrial Chem. & Fiberglass Corp. v. The North River Ins. Co.*, 908 F.2d 825, 829 n.3 (11th Cir. 1990) (holding that the last act necessary to the execution of a policy was "the receipt and acceptance of the policies by the named insured"). The parties here bargained for the application of Florida law because that is where the Policy was clearly delivered. *See Strochak v. Federal Ins. Co.*, 717 So. 2d 453, 455 (Fla. 1998) (holding that because the policy was issued for delivery in Florida, "we must presume that the parties to this contract bargained for, or at least expected, Florida law to apply."); *Sturiano*, 523 So. 2d at 1130 ("In the case of an insurance contract, the parties enter into that contract with the acknowledgment that the laws of that jurisdiction control their actions. In essence, that jurisdiction's laws are incorporated by implication into the agreement.").

Application of Florida law is consistent with Florida's reasons for adhering to *lex loci contractus* in contract cases. In *Sturiano* and *Roach*, *supra.*, the Florida Supreme Court identified two paramount concerns – that the parties be able to readily identify which law applies at the moment of contracting, and that the law to be applied not change based on happenstance. *See Roach*, 945 So. 2d at 1164 ("We concluded that to abandon this principle and permit a party to change or modify contract terms by moving to another state would unnecessarily disrupt the stability of contracts."). This Court can readily observe the international scope of brokers like Marsh, which has offices in every State as well as internationally. *See*, http://usa.marsh.com/AboutUs.aspx. It is mere fortuity that a particular Marsh office receives a

binder or other form of evidence of policy issuance – a fortuity which could lead to the application of laws unrelated to any of the contracting parties or the dispute at issue.[6]

*Sturiano* hypothesized that in a mobile society, having applicable law change based on the whim of an automobile driver was impractical. 523 So. 2d at 1129 ("The very reason Sturiano gives as support for discarding *lex loci contractus*, namely that we live in a migratory, transitory society, provides support for upholding that doctrine.").  Having applicable law depend on the location of a broker ignores the nature of an internet-based commercial broker and how it functions today.  There are lead, sub-brokers and specialty product brokers.  One policy could involve any or all of these, and many brokers work remotely in places like Seattle or Tucson, or even from home offices.  We not only live in a mobile society but one which operates remotely in far-flung locations. The accident of a broker's location poses the same risks regarding choice of law rejected twice by the Florida Supreme Court.  The parties can readily apprehend that Florida law be applied to interpretive disputes given Sun's home office listed on the policy declarations, thus avoiding later uncertainty as to which law might govern a dispute, especially where there may be a conflict of laws to which we now turn.

## C.  There is an Actual Conflict Requiring a Choice of Law Determination

There is a genuine conflict between the laws of New York and Florida concerning interpretation of the Policy; this is not a situation where a false conflict exists.[7]  *See*, *e.g.*, *AIG Premier Ins. Co. v. RLI Ins. Co.*, 813 F. Supp. 2d 1315, 1321 (M.D. Fla. 2011) ("A 'false conflict' exists where the laws of the interested jurisdictions are (1) the same; (2) different but

---

[6]Although here, Twin City's issuance of the insurance binder to Sun's agent and broker in Florida reinforces the application of Florida law based on delivery of the Policy to Sun at its Florida address listed on the Declarations page.

[7] The conflict exists because of defenses to coverage asserted by Twin City; defenses which are arguably more robust under New York law as currently perceived by the insurer.

would produce the same outcome under the facts of the case; or (3) when the policies of one jurisdiction would be furthered by the application of its laws while the policies of the other jurisdiction would not be advanced by the application of its laws.").  "A true conflict exists when 'two or more states have a legitimate interest in a particular set of facts in litigation and the laws of those states differ or would produce a different result." *Walker v. Paradise Grand Hotel, Ltd.*, 2003 WL 21361662, at *2–3 (S.D. Fla. 2003)).

There are significant differences between New York and Florida law as they relate to the policies.  First, Florida has not adopted a particular rule on how to allocate costs and settlement amounts under a policy that does not expressly state the method of allocation.  While the Twin City Policy incorporates an allocation provision, Sun does not believe it applies to the claims in this case.[8] Thus, Twin City may argue that allocation under the common law should be permitted (though Sun disputes this as well).  In an unpublished order, however, the Northern District of Florida in determining how to allocate settlement amounts and defense costs under an E&O policy that had no allocation clause stated that "settlement amounts and defense costs must be allocated between covered and non-covered claims based on the actual facts, overall circumstances and economic realities of the underlying litigation."  *Fla. Sch. Boards Ins. Trust v. United Nat' Ins. Co.*, Case No. 4:08cv246-RH/WCS (N.D. Fla. Nov. 24, 2008).  In contrast, New York courts have allocated loss on the basis of the relative exposure of the respective defendants. *See Caterpillar, Inc. v. Great Am. Ins. Co.*, 62 F.3d 955, 961 (7th Cir. 1995).[9]

---

[8] Sun's coverage position will be fully briefed on summary judgment.

[9] Under the relative exposure rule, courts allocate settlement amounts based on a complex formula involving a comparison of the potential exposure of the insured and uninsured defendant(s) as if the litigation had proceeded to trial.  *See Caterpillar*, 62 F.3d at 961.  There are other options as well, though discussion of these choices pends briefing on the absence of an effective allocation clause in the operative Twin City insurance policy.

Second, under Florida law, the insurance company must prove that it made sincere efforts to bring about the insured's cooperation, that those efforts were ignored by the insured, and that the insurance company suffered substantial prejudice before an allegedly unauthorized settlement will preclude coverage. *Harris Specialty Chemicals, Inc. v. United States Fire Ins. Co.*, 2000 WL 34533982, at *11 (M.D. Fla. 2000); *Holinda v. Title & Trust Co. of Fla.*, 438 So. 2d 56, 57 (Fla. 5th DCA 1983). Under New York law, it appears that a showing of prejudice by the insurer may not be required. *See*, *e.g.*, *Travelers Indem. Co. v. Eitapence*, 924 F.2d 48, 50 (2nd Cir. 1991). Choice of law for these issues, among others, will likely have an impact on the outcome of this coverage litigation.

### D. A Choice of Law Determination Will Conserve Judicial and Litigant Resources

A choice-of-law determination at this stage of litigation serves the common interest of judicial and litigant economy. A choice of law ruling will guide the parties' motion practice – even at the motion to compel stage, as relevancy in turn is influenced by the substantive law to be applied – and will certainly influence the parties' dispositive motions as well as this Court's consideration of the issues being raised. An early ruling will obviate the need to review arguments under both New York and Florida law or to entertain choice of law at a later date. *See James River Ins. Co. v. Fortress Systems, LLC*, 2012 WL 760773, at *3 (S.D. Fla. March 8, 2012) (addressing choice of law prior to summary judgment and applying Nebraska law under *lex loci contractus* to a policy issued and delivered to the insured in Nebraska).

### CONCLUSION

As set forth above, Florida's adherence to the doctrine of *lex loci contractus* requires the application of Florida law to the Twin City Policy. Accordingly, Sun respectfully requests that

the Court enter an Order finding that Florida law governs the substantive issues in this insurance coverage dispute.

Respectfully submitted,

**VER PLOEG & LUMPKIN, P.A.**
*Counsel for Plaintiff*
100 S.E. 2nd Street – 30th Floor
Miami, FL  33131-2151
Tel: 305-577-3996
Fax: 305-577-3558


*/s/Arya Attari*
**R. Hugh Lumpkin, Esq.**
Florida Bar No. 308196
hlumpkin@vpl-law.com
**Arya Attari, Esq.**
Florida Bar No. 58847
aattari@vpl-law.com
**Christopher T. Kuleba, Esq.**
Florida Bar No. 105302
ckuleba@vpl-law.com

## <u>CERTIFICATION OF GOOD FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues, and is authorized to represent that Defendant's counsel opposes the relief sought.

CASE NO. 12-81397 CIV-MARRA/MATTHEWMAN

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on October 23, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List *via* transmission of Notice of Electronic Filing generated by CM/ECF.


By: *<u>/s/Arya Attari</u>*
              **Arya Attari**

CASE NO. 12-81397 CIV-MARRA/MATTHEWMAN

## <u>SERVICE LIST</u>

*Sun Capital Partners, Inc. v. Twin City Fire Insurance Co.*
CASE NO. 12-81397 CIV-MARRA/MATTHEWMAN

David M. Leonard, Esq.
Catherine Salinas Acree, Esq.
David J. Forestner, Esq.
*Counsel for Twin City Fire*
Carlton Fields Jorden Burt, P.A.
One Atlantic Center
1201 West Peachtree St., Suite 3000
Atlanta, GA 30309
Telephone: 404-815-3380
Fax: 404-815-3415
Email: dleonard@cfjblaw.com
Email: cacree@cfjblaw.com
Email: dforestner@cfjblaw.com
*Via CM/ECF Transmission*

Michael R. Delhagen, Esq.
Courtney E. Scott, Esq.
*Co-Counsel for Twin City Fire*
Tressler LLP
One Penn Plaza, Suite 4701
New York, NY 10119
Telephone: 646-833-0900
Email: mdelhagen@tresslerllp.com
Email: cscott@tresslerllp.com
*Via CM/ECF Transmission*

Joseph Ianno, Jr.
Carlton Fields Jorden Burt, P.A.
*Counsel for Twin City Fire*
525 Okeechobee Blvd.
Suite 1200
West Palm Beach, FL  33401
Telephone: 561-659-7070
Fax: 561-659-7368
Email: jianno@cfjblaw.com
*Via CM/ECF Transmission*

S064.101
217625_1