UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO. 12-81397 CIV-MARRA/MATTHEWMAN

SUN CAPITAL PARTNERS, INC.

       Plaintiff,

v.

TWIN CITY FIRE INSURANCE COMPANY,

     Defendant,

_____/

## SUN CAPITAL'S LIMITED OBJECTIONS TO ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO QUASH AND/OR MOTION FOR PROTECTIVE ORDER REGARDING SUBPOENAS RELATED TO THE UNDERLYING LITIGATION [DE 56]

Plaintiff, Sun Capital Partners, Inc. ("Sun"), pursuant to 28 U.S.C. §636(b)(1)(A), Fed. R. Civ. P. 72(a), and S.D. L. R. Mag. J. Rule 4(a)(1), submits its limited objections to the Order Granting in Part and Denying in Part Defendant Twin City's Motion to Compel Production of Documents [DE 54], subsequent to the Court's *In Camera* Review of the disputed documents submitted by Sun Capital [D.E. 147] (the "April 22, 2015 Order"), and in support thereof states:

### INTRODUCTION

On April 15, 2015, the parties argued their positions concerning Sun's objections [D.E. 94] to the Order of the Magistrate Judge dated December 3, 2014. Discovery has essentially been stayed pending the Court's ruling on said objections [D.E. 148]. Sun believes that the April 22, 2015 Order travels much the same erroneous path. Thus, to promote consistency and afford the parties the benefit of a single, dispositive ruling, as these are allied issues, Sun objects to certain aspects of the April 22, 2015 Order to the extent it holds that documents subject to attorney-

client privilege and/or work product immunity must be disclosed.[1] Sun's objections are based on the following: (1) Sun shared a very limited common interest with Twin; the existence of that interest does not allow or require compelled disclosure; (2) Sun anticipated litigation as of September 2010 (as opposed to November 2, 2012); and (3) Sun did not place the documents in question "at issue."

## ARGUMENT

### A.     Standard of Review

Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A) permit a party to file objections to a Magistrate Judge's discovery order. *See also* S.D. Fla. L. R. Mag. J. Rule 4(a)(1). Upon objection, "the District Judge must consider those 'objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *Traylor v. Howard*, 433 F. App'x 835, 836 (11th Cir. 2011) (citations omitted). A finding is clearly erroneous if "the reviewing court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed." *Krys v. Lufthansa German Airlines*, 119 F. 3d 1515, 1523 (11th Cir. 1997). An order is contrary to law if the Magistrate Judge failed to apply or misapplied the relevant statutes, case law or rules of procedure. *S.E.C. v. Cobalt Multifamily Investors I, Inc.*, 542 F. Supp. 2d 277, 279 (S.D.N.Y. 2008) (citations and internal quotations omitted).

### B.     Sun was not in a fiduciary relationship with Twin, and, therefore, did not share a broad common interest with Twin. To the degree a common interest existed, the doctrine only serves to protect from compelled disclosure to third parties the privileged nature of documents to the extent provided. It is not a rule of disclosure to those sharing a common interest.

---

[1] Sun has produced <u>all</u> of the Marsh communications ordered disclosed; the Magistrate denied Twin's motion to compel production of the majority of these documents. [D.E. 147 at 19-21]

CASE NO. 12-81397 CIV-MARRA/MATTHEWMAN

The common interest doctrine permits parties who share a common legal interest to exchange privileged information without waiving the privilege as to third parties by the disclosure. *Visual Scene, Inc. v. Pilkington Bros., plc.*, 508 So. 2d 437, 440 (Fla. 3d DCA 1987). The April 22, 2015 Order states that a common interest exists because Sun voluntarily entered into an insurance agreement that contained a cooperation clause, and filed a claim under that policy. [D.E. 147 at 13.] The Court should not confuse the cooperation clause with the existence or absence of a common interest. The purpose of the cooperation clause, as previously argued by Sun, is to require the insured to cooperate with the insurer in collecting factual information so that the insurer can analyze the underlying case and determine its exposure. That purpose ends once the underlying case concludes.[2] Thereafter, an insurer who is in litigation with an insured obtains information pursuant to the rules of civil procedure. If the Court equates the cooperation clause with a finding of common interest, then every insured that obtains an insurance policy with the omnipresent cooperation clause and files a claim with its insurer will automatically hold a common interest with its insurer. That simply is not the legal standard. Such a standard would actually encourage the insured to litigate rather than cooperate. *See Eastern Air Lines*, 716 So. 2d at 343 ("Under Florida law, the cooperation clause does not eviscerate the attorney-client privilege."). The December 3, 2014 Order previously found that Twin and Sun shared a common interest. [D.E. 88.] Sun objected to the Court's December 3, 2014 Order [D.E. 94] disputing the

---

[2] The cooperation clause only applies to require disclosure when the insured and the insurer are in a fiduciary relationship. *Eastern Air Lines, Inc. v. U.S. Aviation Underwriters, Inc.*, 716 So. 2d 340 (3d DCA 1998). Where a fiduciary relationship exists, a court may compel production of documents as between the two parties in the relationship from the file of the attorney who represented the insured. *Id.* at 343. Where a fiduciary relationship does not exist and the parties are adversarial, the court may not compel production based on the cooperation clause. *Id.* at 343.

3

finding that a common interest existed. Sun incorporates its arguments in support of these objections [D.E. 94], which include the following:

- Even where common interest exists, the shared privilege only extends to those matters addressed jointly among the clients and counsel.
- The relationship between Sun and Twin was antagonistic from the outset.
- Twin is an excess carrier that played no part in Sun's defense.
- Twin's interests were in conflict with Sun's from the beginning.
- An insurer cannot assert a common interest with its insured with respect to the defense of the underlying litigation for which the insured seeks coverage while simultaneously anticipating litigation with the insured over the extent of the insurer's obligations with respect to that litigation.

If the Court nevertheless concludes that the parties did share a common interest[3], there is still no basis to compel Sun to produce documents to Twin. Common interest is not a rule of disclosure. The purpose of the common interest doctrine is to protect the privileged nature of a document or communication when it is shared with one holding such an interest—it merely extends attorney-client privilege and work-product immunity to a limited species of shared communications. *E.g.*, *Visual Scene, Inc.*, 508 So. 2d at 440; *Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*, 300 F.R.D. 590 (S.D. Fla. 2014); *JTR Enter., LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts & Quartz Crystals*, 297 F.R.D. 522, 528 (S.D. Fla. 2013); *In re Indiantown Realty Partners, Ltd. P'ship*, 270 B.R. 532, 539 (Bankr. S.D. Fla. 2001). It does not serve as a vehicle to compel disclosure of documents that a party sharing a common interest does

---

[3] Though Sun entered into a common interest agreement with Twin, as the Court is well aware, the agreement afforded the primary carrier, who was providing a defense, access to the legal invoices. It also allowed the parties to engage in limited communications with each other during the life of the Underlying Litigation so that the carriers could formulate their position. Sun's position on this issue is addressed in its Objection to the Court's December 3, 2014 Order [D.E. 94].

not choose to disclose.[4] The April 22, 2015 Order, however, misapplies the doctrine by compelling the disclosure of privileged documents. The Court should therefore set aside this aspect of the April 22, 2015 Order as clearly erroneous and contrary to law.

      **C.**    **The *Milinazzo* rebuttable presumption applies only to insurers, not policyholders; the Court should therefore set aside the finding that Sun's documents prepared before Twin's November 2, 2012 coverage denial were prepared in the ordinary course of business.**

As *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691 (S.D. Fla. 2007), and other in-District decisions recognize, the very basis for the application of the doctrine established in *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655 (S.D. Ind. 1991), is the "unique" nature of an insurer's business – one in which claims are investigated with an eye toward litigation in the ordinary course:

> This court has joined other courts in this District and adopted the framework established in *Harper v. Auto–Owners Ins. Co.,* to analyze work-product claims in the insurance context. **Because work-product immunity applies to documents primarily created to aid in possible litigation, and insurance companies investigate claims in the ordinary course of their business**, finding the point in time when work-product immunity attaches is difficult. Thus, to aid in the inquiry, the *Harper* court adopted the rebuttable presumptions that documents prepared prior to a claim's denial are not work-product, and, conversely, those created after are.

*1550 Brickell Associates v. QBE Ins. Co.*, 597 F. Supp. 2d 1334, 1336 (S.D. Fla. 2009) (emphasis added) (citing *Milinazzo*, 247 F.R.D. at 701 ("[I]nvestigating documents … from an insurance company straddle both ends of this definition, because it is in the ordinary course of business for an insurance company to investigate a claim with an eye toward litigation.")); *Comm. Long Trading Corp. v. Scottsdale Ins. Co.*, No. 12-22787-CIV, 2012 WL 6850675, at *2 (S.D. Fla. Dec. 26, 2012) ("[I]t is in the ordinary course of business for an insurance company to

---

[4] What <u>must be</u> provided to the insurer, during pendency of an underlying litigation, is the subject of the cooperation clause. *See Eastern Air Lines, Inc.*, 716 So. 2d 340.

investigate a claim with an eye toward litigation…. Recognizing this practical reality, many courts, including several in the Southern District of Florida, establish a rebuttable presumption that documents or things prepared before an insurer's final decision on a claim are not work product but that documents and things produced after a claim's denial are work product."); *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 268 F.R.D. 695, 697 (S.D. Fla. 2010) ("Because insurance companies ordinarily investigate a claim in contemplation of litigation, courts use a special analysis when considering whether documents created prior to the initiation of litigation are privileged.").[5]

An insured, however, does not investigate or evaluate claims in the ordinary course of its business. Despite this, the April 22, 2015 Order holds that "the date on which Sun Capital reasonably anticipated litigation was November 2, 2012, the date of the final denial letter … [because] Sun Capital has not overcome the presumption under *Milinazzo*, as it has not provided specific evidentiary proof of objective facts that it reasonably anticipated litigation before the date of the final denial letter—November 2, 2012." D.E. 147 at p. 8. The application of the *Milinazzo* presumption to documents prepared by an <u>insured</u> is plainly contrary to the law of this District. Florida courts have never applied the *Milinazzo* presumption to compel the production

---

[5] *See also*, *e.g., Harper*, 138 F.R.D. at 662 ("An insured seeking documents and reports in his insurer's claims file presents a special problem for application of the work product rule because it is the very nature of an insurer's business to investigate and evaluate the merits of claims."); *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, No. 6:04-CV-1838-ORL-22, 2006 WL 1733857, at *2 (M.D. Fla. June 20, 2006) ("Many courts have noted the difficulty in determining whether documents prepared by an insurance company or its representatives are entitled to work product protection because it is an insurer's business to investigate and adjust claims."); *Cutrale Citrus Juices USA, Inc. v. Zurich Am. Ins. Grp.*, No. 5:03-CV-420-OC-10GRJ, 2004 WL 5215191, at *2 (M.D. Fla. Sept. 10, 2004); *The Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, No. 08-81442-CIV, 2009 WL 2513411, at *8 (S.D. Fla. July 13, 2009) ("Defendant focuses on the portion of the *Brickell* analysis that indicates the framework for determining the point in time in which an insurance company anticipates litigation."); *AIG Centennial Ins. Co. v. O'Neill*, No. 09-60551-CIV-ZLOCH, 2010 WL 4116555, at *11 (S.D. Fla. Oct. 18, 2010).

of an <u>insured's</u> documents prepared before the insurer's final coverage denial.[6] The reason for this is clear. Applying the *Milinazzo* presumption to the insured's documents not only runs contrary to purpose behind the presumption and the well-established law of this District, but essentially eradicates the work-product doctrine for insureds seeking coverage from their insurer. Furthermore, even though Sun attempted to find common ground with Twin for two years, this does not vitiate the work product immunity. *See Travelers Indem. Co. of Conn. v. Philips Med. Sys. N.A., Inc.*, No. 07-23246-CIV, 2008 WL 2704447, at *3 (S.D. Fla. July 7, 2008) (documents created three years before filing of lawsuit were created in anticipation of litigation). A contrary result would dissuade policyholders from attempting to negotiate with insurers. The Court should therefore set aside this aspect of the April 22, 2015 Order as clearly erroneous and contrary to law.

### D. Twin, not Sun, injected issues pertaining to Sun's privileged and immune documents by virtue of its defense(s) to coverage, and therefore cannot benefit from the at-issue waiver doctrine to obtain Sun's privileged or work-product immune documents.

The April 22, 2015 Order incorrectly found that documents relating to the defensibility of the underlying claims, the settlement of the underlying claims, and the allocation of reimbursement for covered and non-covered losses were placed "at-issue" by Sun. The court determined that documents regarding these topics were "at issue" because: 1) Sun has placed privileged information at issue by virtue of the allegations in its Complaint; 2) allocation is a primary dispute amongst the parties; 3) Sun "may" rely on work-product communications to

---

[6] In *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 622 (S.D. Fla. 2013) the court stated that because there had been no final denial on coverage and because the insurer continued to cooperate as to the insured's defense, "there **may** be a rebuttable presumption that the materials in [the insureds'] privilege log are discoverable by [Indian Harbor], *i.e.*, are not entitled to opinion work-product protection from disclosure." (emphasis added). The court did not hold that a rebuttable presumption would apply to the insured's documents and, unlike in *Maplewood*, Twin City did not participate in Sun's defense.

prove its allegations; and 4) the information is vital to Twin's defense. [D.E. 147 at 15-16]. This reasoning for compelling disclosure of privileged documents is contrary to law.

### a.  At-issue waiver of attorney-client privileged material under Florida law.

Under Florida law, "at-issue waiver [of attorney-client privileged information] only occurs 'when a party 'raises a claim that will *necessarily* require proof by way of a privileged communication.''" *Heffernan Ins. Brokers, Inc*., 300 F.R.D. 590 (quotations and citations omitted). Key to at-issue waiver is the requirement that the party seeking the information must not have injected the issue itself. *See*, *e.g.*, *Guarantee Ins.*, 300 F.R.D. 590. It is the party's burden claiming waiver to present evidence of waiver. *Latele Television, C.A. v. Telemundo Communications Group, LLC*, No. 12–22539–CIV, 2014 WL 5529403 *11 (S.D. Fla. Nov. 3, 2014). It is not enough simply to file a lawsuit; "[a] party does not waive the privilege simply by bringing or defending a lawsuit." *Guarantee Ins. Co.*, 300 F.R.D. at 593.

### i.  Well-established Florida jurisprudence holds that the party seeking to waive privilege must not have injected the issues itself.

In *Guarantee Insurance Co.*, a workers' compensation insurer filed suit against an insurance agent alleging negligence and breach of fiduciary duty for failing to timely notify its excess insurer about an underlying state tort claim. *Id*. at 592-93. The defendants sought privileged documents relating to the underlying state tort claim and its settlement. *Id*. at 593. The plaintiff objected based on attorney-client privilege and work-product immunity. *Id.* The defendants argued that the plaintiff waived any privilege or immunity as to the withheld documents when it brought suit and placed the merits of the underlying state case and the reasonableness of the settlement at issue pursuant to the "at-issue" doctrine. *Id*. The court determined that the elements necessary to prove the plaintiff's causes of action for negligence and breach of fiduciary duty did not place the privileged documents at issue, and held that

"[p]laintiff has not put causation or intervening negligence directly at issue…there has been no at-issue waiver of the attorney-client privilege." *Id*. at 593-94; *See also In Virgin Records America, Inc. v. Skystream, Inc.*, 941 So. 2d 501, 502 (Fla. 3d DCA 2006)(quashing the trial court's order after evaluating the elements plaintiff was required to prove in the indemnification action and held that "the content of the attorney's advice has nothing to do with the ultimate resolution of the case.")

In *Tolz v. Geico Gen. Ins. Co*., No. 08-806630 CIV-MARRA, 2010 WL 384745 (S.D. Fla. Jan. 27, 2010), this Court considered similar issues, ultimately disagreeing with the magistrate judge who granted Geico's motion to compel production of litigation files from the attorney in the underlying action. This order was based on a finding that the attorney-client privilege had been waived through "issue injections" by Tolz as a result of filing a bad faith claim. *Id*. at *2. On rehearing, however, this Court found that the magistrate judge had erred, because it was not the insured who had "injected the issue," but the defendant insurer who challenged the insured's unwillingness to settle as an affirmative defense. *Id*. at 4.[7]

## ii. Twin injected the issue of allocation as an affirmative defense, not Sun.

---

[7] While *Tolz*, at first blush, seems to suggest that there may have been waiver for some work product material, the final outcome of this issue and the extent to which the court applied the doctrine is unclear from the non-published opinion cited in the Order. In *Tolz*, this Court conditionally upheld the portion of the discovery order allowing work product immunity waiver, but it did so with reservations. *See Tolz*, 2010 WL 384745, at *5 (reserving ruling on the question of whether Geico met the standard for production of work product immune materials after the court conducts an in camera review of the documents). On rehearing, this part of the Order finding waiver of immunity was overturned. *Id*. at *4. A subsequent unpublished order however, confirms that no production of work product documents ever occurred. On February 9, 2010, this Court granted the non-party's objection to the finding that the immunity had been waived, and overruled the remaining portion of the earlier order finding waiver of the work product immunity doctrine. As a result, no production of documents protected by work product immunity was allowed in *Tolz.*

Sun's position is analogous to *Guarantee Insurance Co.* and *Tolz.* Sun sued, disputing Twin's lack of coverage for covered loss. Twin in turn has asserted the issue of allocation as an affirmative defense. Accordingly, just as in *Tolz*, it is Twin that has injected this issue, not Sun (Sun claims allocation is prohibited by the terms of the Policy and is inconsistent with applicable laws). *See Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F. 3d 851, 863 (3d Cir. 1994) (holding that plaintiffs who filed suit against insurer for its failure to defend and indemnify did not place privileged documents (evaluations or assessments of plaintiff's potential liability for the claims before the policy was purchased) at-issue; instead it was the defendant that injected the issues by alleging the claims were excluded from the policy because they were expected or intended injuries.).

The April 22, 2015 Order also does not examine the elements required to prove Sun's claims, or whether those elements necessarily place the documents Twin seeks "at issue" in the sense that Sun must use them to recover under the Policy. *See Guarantee Ins. Co.*, 300 F.R.D. at 593; *In Virgin Records America, Inc. v. Skystream, Inc.*, 941 So. 2d 501, 502 (Fla. 3d DCA 2006). Instead, the April 22, 2015 Order incorrectly found that documents relating to the defensibility of the underlying claims, the settlement of the underlying claims, and the allocation of reimbursement for covered and non-covered losses were placed "at-issue" based on allegations in Sun's Complaint regarding Twin's actions, stating "it appears that one of the primary disputes between the parties relates to the allocation clause of the subject policy…". [D.E. 147 at 15]. The allegations in Sun's complaint relate to the reasons Twin refused to provide coverage; in other words, Sun set forth Twin's defenses to coverage as then-expressed.

As the court concedes, Twin injected the issues itself by asserting as a defense to coverage that Sun's attorney's fees and costs incurred in the Underlying Litigation and

settlement payment made should be subject to allocation. [D.E. 147 at 16 (stating that the privileged communications Twin seeks are "vital to [Twin's] defense")]. If courts followed the reasoning of the April 22, 2015 Order, an insured that challenges an allocation or any defense asserted by an insurer effectively waives any attorney-client privilege and work product immunity in the underlying case. Such a result is contrary to settled law and eviscerates privileges and immunities in every case where parties dispute the reasons why another party allegedly failed to perform. The Court should therefore overrule the April 22, 2015 Order to the extent it compels production of this privileged and immune information as clearly erroneous and contrary to law.

**b.  At-issue waiver of work-product immune material under federal law.**

Work-product immunity is evaluated pursuant to federal law in a diversity case such as this. *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 700 (S.D. Fla. 2007). It is well-settled that there is an implicit waiver of work product immunity where: (1) a party asserts waiver of the protection due to some affirmative act by the party invoking the protection; (2) through this affirmative act, the party invoking the protection puts the protected information at issue by making it relevant to the case; and (3) as a result, application of the protection would deny the opposing party access to information vital to its case. *Stern v. O'Quinn*, 253 F.R.D. 663, 676 (S.D. Fla. 2008) (citations omitted); *Volpe v. U.S. Airways, Inc.,* 184 F.R.D. 672 (M.D. Fla. 1998). In order to find an at-issue waiver for work product, even under the federal standard, "it is the holder of the [immunity] that must have put the information sought at issue." *Guarantee Ins.*, 300 F.R.D. at 595.

As discussed in Section D(a) hereof, Twin injected the issues described above, not Sun. Additionally, Sun's counsel's work product is not necessary for Sun to prove its case at trial. Counsel's "advice is not in issue merely because it is relevant, and does not necessarily become

in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Guarantee Ins. Co.*, 300 F.R.D. at 595 (quoting *Rhone-Poulenc*, 32 F. 3d at 863). Rather, "the advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Id.*

In addition, *Tolz* counsels that courts applying at-issue waiver to work-product immunity should do so narrowly, tailored to specific documents directly relevant to the issue(s) in litigation and necessary to the privilege holder's proof on an issue where the holder bears the burden of proof; courts should not allow such discovery before a full *in camera* inspection; and, any protected documents not found to specifically address the issues asserted by the party requesting the waiver should be sealed or protected. None of the *Tolz* concerns were addressed in the April 22, 2015 Order. For all of these reasons, the Court should set aside the April 22, 2015 Order to the extent it compels production of work-product immune information as clearly erroneous and contrary to law.

> ### c. Waiver-by-affirmative-reliance cannot exist based on mere speculation that the party will rely on privileged or immune material to prove its case.

The waiver-by-affirmative-reliance doctrine applies to both the attorney-client privilege and work-product doctrine, and both federal and state courts recognize the doctrine. *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 286 F.R.D. 661, 664 (S.D. Fla. 2012) (citations omitted). The waiver-by-affirmative-reliance doctrine is premised on the concept that a party should not be able to selectively disclose protected communications and simultaneously "claim[] the shelter of privilege [or immunity] to avoid disclosing those that are less favorable." *Id.* (citing *Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 471 (N.D.Cal. 2012)).

The April 22, 2015 Order muses that Sun will likely need to rely on attorney-client communications to prove its case, though conceding that "Sun Capital has not spelled out in detail what work-product communications it will rely on to prove its allegations." [D.E. 147 at 16.] At-issue waiver cannot be based on speculation that Sun will rely on documents withheld as privileged or work-product immune. *QBE Ins. Corp. v. Jorda Enter., Inc.*, 286 F.R.D. 661, 663 (S.D. Fla. 2012). Sun has not identified a single document it intends to rely upon withheld on the basis of privilege or immunity. Moreover, only what <u>is</u> disclosed determines the scope of waiver; "the smaller the amount of privileged information disclosed, the narrower the scope of the waiver." *Id.* at 666. The Court "cannot pinpoint the scope of the waiver until" it determines what documents Sun intends to rely upon (if any). *Id.* In *QBE Insurance Corp. v. Jorda Enterprises, Inc.*, the party announced its intent to introduce privileged documents and the court still found that an implied waiver did not occur, as privileged documents had not been disclosed. *Id.* Sun has not announced it has any intent to rely on or produce documents withheld on the basis of attorney-client privilege or work product immunity. For these reasons, the Court should not find a waiver based on its presently speculative belief that privileged documents will be relied upon.

### d. Relevance of the information sought alone does not vitiate attorney-client privilege or work-product immunity.

The mere relevance of documents to an opposing party's position does not nullify the attorney-client privilege or work-product immunity. *See Choice Rest. Acquisition Ltd. v. Whitley, Inc.*, 816 So. 2d 1165, 1167-68 (Fla. 4th DCA 2002) (holding that "a court cannot find waiver of" the accountant-client privilege "merely because the information sought is needed by the opposing party to provide information helpful to cross-examination or for the defense of a cause of action."); *see also Guarantee Ins. Co.*, 300 at 595 (quoting *Rhone-Poulenc,* 32 F. 3d at 851 ("Relevance is not the standard for determining whether or not evidence should be protected

from disclosure as privileged, and that remains the case even if one might conclude the acts to be disclose are vital, highly probative, directly relevant or even go to the heart of an issue.")). The April 22, 2015 Order states that the documents sought are relevant to Twin's defense, but this alone does not make them subject to production – if that were true, then the protections of attorney-client privilege and work-product immunity would be meaningless. Nor does Twin need these documents to advance its coverage-defeating positions. Defense obligations are determined by the pleadings. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F. Supp. 1424, 1430 (S.D. Fla. 1991). Indemnity is determined by what was settled and why the settlement was paid. *Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc*., 344 F. Supp. 2d 1358, 1367 (M.D. Fla. 2004). In this regard, Twin was able to formulate—and stick to—it coverage positions without a single one of the documents ordered produced, and without ever accusing Sun of failing to cooperate by providing needed factual information. As its coverage counsel testified:

> Q. Okay. Did Sun Capital ever refuse to provide you with information that you asked for?
> A. Not to my knowledge.
> Q. Did you ever ask Sun Capital any questions that you did not get an answer to?
> A. Not to my knowledge.

*See* Ex. A.  Delhagen Dep. Trans. 50: 9-15.

> Q. …Did you have any communications with Marsh concerning information you needed in order to fulfill your role as coverage or monitoring counsel?
> A. Yes.
> Q. Did they provide you information that you needed?
> A. They provided information in response to requests we made.
> Q. Did they ever fail to provide you information that you asked for?
> A. I don't know.
> Q. Can't think of anything right now?
> A. I can't.

*See* Ex. A. Delhagen Dep. Trans. 65: 11-24.

CASE NO. 12-81397 CIV-MARRA/MATTHEWMAN

## CONCLUSION

This Court should set aside the April 22, 2015 Order as clearly erroneous and/or contrary to law because (1) the common interest doctrine does not apply here to compel production, (2) Sun anticipated litigation as of September 2010 (not November 2, 2012), (3) Sun did not inject any issues into this action that would require it to divulge work product immune or attorney-client privileged material, (4) Sun has not affirmatively relied on any protected documents, and (5) relevance to Twin's defenses alone is insufficient to overcome privilege and work-product immunity. To the extent the Court does not overrule the April 22, 2015 Order, Sun asks that the Court establish certain safeguards for Sun's production of documents, including *in camera* review.

Respectfully submitted,

**VER PLOEG & LUMPKIN, P.A.**
*Counsel for Plaintiff*
100 S.E. 2nd Street – 30th Floor
Miami, FL 33131-2151
Tel: 305-577-3996
Fax: 305-577-3558

*s/R. Hugh Lumpkin*
**R. Hugh Lumpkin, Esq.**
Florida Bar No. 308196
hlumpkin@vpl-law.com
**Arya Attari, Esq.**
Florida Bar No. 58847
aattari@vpl-law.com
**Tiffany C. McCaffery, Esq.**
tmccaffery@vpl-law.com
Florida Bar No. 78118
**Christopher T. Kuleba, Esq.**
Florida Bar No. 105302
ckuleba@vpl-law.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 6, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List *via* transmission of Notice of Electronic Filing generated by CM/ECF.

By: *s/R. Hugh Lumpkin*
       **R. Hugh Lumpkin**

## SERVICE LIST

David M. Leonard, Esq.
David J. Forestner, Esq.
*Counsel for Twin City Fire*
Carlton Fields Jorden Burt, P.A.
One Atlantic Center
1201 West Peachtree St., Suite 3000
Atlanta, GA 30309
Telephone: 404-815-3380
Fax: 404-815-3415
Email: dleonard@cfjblaw.com
Email: dforestner@cfjblaw.com
*Via CM/ECF Transmission*

Michael R. Delhagen, Esq.
Courtney E. Scott, Esq.
*Co-Counsel for Twin City Fire*
Tressler LLP
One Penn Plaza, Suite 4701
New York, NY 10119
Telephone: 646-833-0900
Email: mdelhagen@tresslerllp.com
Email: cscott@tresslerllp.com
*Via CM/ECF Transmission*

Joseph Ianno, Jr.
Carlton Fields Jorden Burt, P.A.
*Counsel for Twin City Fire*
525 Okeechobee Blvd.
Suite 1200
West Palm Beach, FL 33401
Telephone: 561-659-7070
Fax: 561-659-7368
Email: jianno@cfjblaw.com
*Via CM/ECF Transmission*

222601_1