UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-CV-81397-KAM

SUN CAPITAL PARTNERS, INC.,

    Plaintiff,

v.

TWIN CITY FIRE INSURANCE
COMPANY, INC.,

    Defendant.

_____/

**OPINION AND ORDER ON PLAINTIFF'S MOTION
FOR CHOICE OF LAW DETERMINATION**

    This cause is before the Court on Plaintiff Sun Capital's Motion for Choice of Law Determination. (DE 82). The motion is ripe for review. Stemming from this motion is Defendant Twin City's Motion to Strike [Plaintiff's reply in support of its choice-of-law motion] or File Surreply or for Additional Discovery. (DE 87). This motion is also ripe. After some time elapsed, Defendant filed a supplemental response in opposition to Plaintiff's choice-of-law motion, in which it brought newly discovered documents to the Court's attention. Plaintiff moved to strike that supplement or requested leave to file a response. (DE 126). The Court concludes that it has sufficient materials from which to conclude that New York law governs the interpretation of Plaintiff's insurance policies.

    In a diversity action, a federal court must apply the choice-of-law rules of the forum state. LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1515 (11th Cir. 1997). The parties agree that Florida's rule of lex loci contractus governs the Court's choice-of-law determination in this

contract dispute.  (DE 82 at 3; DE 83 at 4).  This rule "provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage.  State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1163 (Fla. 2006).  Lex loci contractus is, in general, an 'inflexible,' bright-line rule that exists 'to ensure stability in contract arrangements.'  Id. at 1164."  Rando v. Gov't Employees Ins. Co., 556 F.3d 1173, 1176 (11th Cir. 2009).

"The determination of where a contract was executed is fact-intensive, and requires a determination of where the last act necessary to complete the contract was done."  Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc., 363 F.3d 1089, 1092-93 (11th Cir. 2004) (internal quotation marks and alteration omitted).  As the Eleventh Circuit has held in the context of Florida's rule of lex loci contractus, "[t]he last act necessary to complete a contract is the offeree's communication of acceptance to the offeror."  Id. at 1093 (citing Buell v. State, 704 So. 2d 552, 555 (Fla. Dist. Ct. App. 1997)).  In the same opinion, however, the Court of Appeals noted—without calling into question—that some courts hold "that a contract dispute is governed by the laws of the state in which the contract was delivered."  Id. (noting holding from Pastor v. Union Cent. Life Ins. Co., 184 F. Supp. 2d 1301, 1305 (S.D. Fla. 2002)).

The parties take differing views on where the "last act" necessary to complete Plaintiff's insurance contracts occurred.[1]  Stressing the Eleventh Circuit's reliance on "communication of

---

[1] This litigation involves an excess "following form" insurance policy Plaintiff obtained from Defendant Twin City.  (See DE 82 at 1).  Plaintiff obtained its primary insurance policy from Houston Casualty Company.  In the context of a "following form" policy, the choice-of-law determination for the primary policy governs the choice-of-law determination for the excess policy.  See CNL Hotels & Resorts, Inc. v. Houston Cas. Co., 505 F. Supp. 2d 1317, 1321 (M.D. Fla. 2007); (DE 82 at 2 n.2; DE 83 at 2 & n.1).  Plaintiff argues that this issue is immaterial, however, because both the primary and excess "policies were issued for delivery in the same

the acceptance," Defendant argues that the last act necessary to create a contract was the insurers' agents' communication of acceptance of Plaintiff's agent's order to bind coverage. (DE 83 at 13; DE 124 at 2). Because acceptance was communicated from New York (to one of Plaintiff's agents who was also in New York), Defendant argues that New York law applies. (DE 83 at 1-2).

On the other hand, Plaintiff argues that the last act was the delivery of the subject policies to Plaintiff at its place of business in Florida. (See DE 126-1 at 3). Consistently rejecting the notion that this Court should undertake a "fact-intensive" inquiry into where the last act of contract formation occurred, Plaintiff argues that Florida law rigidly "requires that the law of the state in which the policy was delivered be applied to interpretation of the policy." (DE 86 at 2).

The Court concludes that Defendant has identified the correct approach.

**I.      Communication of Acceptance**

The Eleventh Circuit's decision in Prime Insurance Syndicate is illustrative. 363 F.3d 1089. There, a trucking company located in Alabama orally purchased a business auto-liability insurance policy covering the period of May 17, 2000, to May 17, 2001. Id. at 1091. On May 19, 2000, before the trucking company received its insurance binder, an employee was involved in an automobile accident in Florida. Id. On May 23, 2000, the insurance company issued the written binder confirming the earlier oral agreement. Id.

The insurance company disputed coverage in the underlying state court litigation, and it filed a declaratory action in the Southern District of Florida to resolve the coverage issue. Id. The state-court action settled, and the insurance company voluntarily dismissed its declaratory

---

manner." (DE 82 at 2 n.2).

3

action; however, the district court retained jurisdiction to consider attorneys' fees. Id. The insureds sought attorneys' fees in accordance with Florida law; the insurer argued that Alabama law—which did not allow an insured to recover attorneys' fees in a coverage dispute—applied. Id. at 1091, 1093.

The Eleventh Circuit affirmed the district court's holding that Alabama law applied. After concluding that the dispute was governed by lex loci contractus, the court agreed that the insurer's "communication of the oral binder to [the insured] constituted acceptance of [the insured's] offer to purchase insurance and, therefore, was the last act necessary to complete the contract" Id. at 1093. "The fortuitous timing of the accident—occurring before the written policy was actually delivered—d[id] not alter the fact that the [insurer] had already communicated acceptance of the contract to [the insured]. Therefore, the district court did not err in applying lex loci contractus to determine that Alabama law governed th[e] insurance contract." Id.

Under facts closely analogous to the instant case, district courts in Florida have found that an insurer's (or its agent's) communication of acceptance of the insured's (or its agent's) offer to purchase insurance is the last act necessary to execute an insurance contract. In National Trust Insurance Company v. Graham Brothers Construction Company, the insurance company argued that Georgia law applied "because the Policy was delivered to the Georgia insured at its principal office in Georgia," whereas the third-party claimant argued Florida law applied because "the last act necessary to complete the contract is the offeree's communication of acceptance to the offeror, which . . . occurred in Florida." 916 F. Supp. 2d 1244, 1252 (M.D. Fla. 2013). After noting the Eleventh Circuit's decision in Prime Insurance Syndicate, the court agreed with the

third-party claimant. Id. The evidence demonstrated that, "after [the insured's] agent emailed [the insurer] with an offer to purchase insurance, stating 'We got the formal order on this account. Please bind coverage effective 11/2/04,' [the insurer] accepted this offer by issuing the Policy from its office in Florida." Id. (internal record citation omitted). Given this evidence, the court held that "the last act necessary to complete the contract occurred in Florida when [the insurer] accepted the agent's offer to bind coverage by issuing the Policy."

The court in National Trust relied on a similar decision in Granite State Insurance Company v. American Building Materials, No. 10-CV-1542, 2011 WL 6025655, at *1 (M.D. Fla. Dec. 5, 2011), aff'd 504 F. App'x 815 (11th Cir. 2013) (declining to decide the choice-of-law question), in which the insured's agent emailed the insurer's agent an offer to purchase insurance by requesting that coverage be bound. The court in Granite State[2] held that Massachusetts law applied based on the following facts:

> In each year, the agents for [the insureds] (who are both located in Florida), received a quote for the policies from the managing general underwriter for the Insurer, VMGU (who is located in Massachusetts). Next, [the insureds'] agent emailed VMGU an offer to purchase the insurance at the prices quoted, by requesting that coverage be bound. VMGU then accepted that offer on behalf of the Insurer and issued a binder for the coverage from its offices in Massachusetts. Each year, after issuing the binder from its offices in Massachusetts, VMGU itself completed the information on the declarations pages of the policies, generated the policies, and emailed electronic versions of the policies to [the insureds'] agents in Florida.

Id. at *4. The court rejected the insurer's contention "that the last act occurred upon receipt of

---

[2] This court also cited the Eleventh Circuit's opinion in Prime Insurance Syndicate, noting that where the last act occurred is "fact-intensive" and "is the offeree's communication of acceptance of the offer." Granite State Ins. Co. v. Am. Bldg. Materials, Inc., 2011 WL 6025655, at *4 (quoting Prime Ins. Syndicate, 363 F.3d at 1092-93).

the binders and policies by [the insured's] agents in Florida, rather than the issuance of the same by VMGU in Massachusetts." Id. at *5 (emphasis in original). This argument, the court held, conflicted with the principle of Florida contract law that "a written contract acceptance is effective at the time it is dispatched—not when it is received by the offeror." Id. (citing Florida cases).

Finally, in a detailed opinion that predates Prime Insurance Syndicate,[3] a bankruptcy court in the Middle District of Florida concluded that the actions of the parties' agents in binding insurance coverage was the last act necessary to create the insurance contract at issue. The Celotex Corp. v. AIU Insurance Co. (In re The Celotex Corp.), 194 B.R. 668 (Bankr. M.D. Fla. 1996). In Celotex Corp., the bankruptcy court discussed the importance of binders in insurance contract formation. Id. at 673 n.5. Citing treatises, the court concluded that "the binder [is] the last act necessary to complete a contract for coverage." Id. ("A contract of insurance is ordinarily complete and closed when the binder is signed and delivered.").

Turning to the case at hand, the materials in the record demonstrate as follows:

Plaintiff Sun Capital assigned the duty of purchasing its insurance policies to its national insurance broker, Marsh Inc. (See DE 82 at 2; DE 82-1; DE 124-2, -3). Underwriting for the excess policy (Twin City) was handled by the Hartford. (See DE 82-1 at 5; DE 83 at 3). Underwriting for the primary policy (Houston Casualty Company) was handed by Professional

---

[3] Although the Eleventh Circuit did not cite In re The Celotex Corp. in its opinion, the underlying decision that the Eleventh Circuit affirmed cited Celotex for the proposition that "delivery does not always dictate what law controls under lex locus contractus, because the determination of where a contract was executed is a fact-intensive one, and requires a determination of 'where the last act necessary to complete the contract [wa]s done.'" (DE 55 at 6 of No. 02-cv-21108, Prime Insurance Syndicate, Inc. v. B.J. Handley Trucking, Inc. (Garber, Mag. J), report and recommendation adopted at (DE 59) (Moreno, J.) (S.D. Fla. 2003)).

Indemnity Agency, Inc.  (See DE 124-2).

The circumstances surrounding the excess policy (Twin City) appear in the record first. On December 28, 2007, Raymond Ash, a Marsh agent located in New York, emailed Ho-Tay Ma, a Hartford agent located in New York, as follows: "Thanks for all your help with this account.  Please consider this e-mail as the formal order to bind coverage for Sun Capital's renewal GPL coverage as follows: [discussing applicable limits, period, and terms] . . . . Please forward the formal binders or confirmation of binding as soon as possible."  (DE 82-1 at 3). From his New York office, Mr. Ma responded to Mr. Ash's email as follows: "Based upon the information provided regarding the above captioned account, we are pleased to provide you with the following Binder for Insurance on behalf of Twin City Fire Insurance Company."  (Id. at 5). Apparently, Mr. Ma emailed a copy of the binder to Mr. Ash in New York, as well as to two Marsh agents located in Florida.  (Id. at 4).

The binding of the primary policy (Houston Casualty Company) was handled the same manner.  On December 28, 2007, Jennifer Hickox, a Professional Indemnity agent, emailed Mr. Ash as follows: "In accordance with your instructions, we are binding Private Equity Professional Insurance as follows [listing applicable limits, period, and terms]."  (DE 124-2 at 2). Ms. Hickox was a Vice President for Professional Indemnity, and her business address was listed in her email as in Mount Kisco, New York.  (Id.).  Ms. Hickox's email does not indicate that it was sent to anyone other than Mr. Ash in New York.  (See id. (listing only Mr. Ash at "Marsh, Inc. – (NY)").

These documents show that both Plaintiff's primary and excess insurance policies were

executed in materially similar ways.[4]  First, Plaintiff's agent, March Inc., emailed the insurer's agent an offer to purchase insurance by submitting a "formal order to bind coverage."  Next, the insurer's agent accepted that offer and issued a binder for coverage from an office in New York.  This acceptance was effective at the time—and at the place—where it was dispatched, i.e., New York.[5]  Granite State Ins. Co., 2011 WL 6025655, at *5; Kendel v. Pontious, 261 So. 2d 167, 169 (Fla. 1972).  The insurer's agent's acceptance of Plaintiff's agent's offer to purchase insurance was the last act necessary to complete the insurance contract.[6]  See Prime Ins. Syndicate, 363 F.3d at 1093.  The fact that only binders were initially exchanged, and not the actual policies, does not alter the conclusion that Plaintiff's agent offered to purchase insurance coverage, specifying the terms of the policy, and the insurer's agent issued an acceptance based on those terms.  (See, e.g., DE 81-1 at 3 (Plaintiff's agent placing an order "to bind coverage" for the period "12/31/07-08"); DE 82-1 at 6 (insurer's agent accepting offer to provide coverage "From: 12/31/2007 To 12/31/2008"); DE 124-2 at 2 (insurer's agent accepting offer to provide coverage

---

[4] Plaintiff states that "both policies were issued for delivery in the same manner."  (DE 82 at 2 n.2).

[5] Thus, the Court concludes that it is immaterial that the binder for Plaintiff's excess policy was received simultaneously by its agents in New York and Florida.  (DE 82-1 at 4; DE 86 at 9-10).  Even if delivery of the emails to the agents was the last act necessary (see DE 86 at 9 (citing In re the Celotex Corp., 194 B.R. at 673)), the email acceptance binding coverage for Plaintiff's primary policy (which controls the choice-of-law determination) was delivered to Mr. Ash in New York only (DE 124-2 at 2).

[6] The Court rejects Plaintiff's argument that the "signed authorization to bind coverage"—in which Plaintiff authorized its agent, Marsh, to "place insurance on our behalf"—was the last act necessary to complete an insurance contract.  (DE 82-2 at 2, 4; DE 86 at 9).  The authorization does not indicate that the listed insurance entities agreed to be bound once Plaintiff authorized its agent to "place insurance on our behalf."  The fact that Plaintiff's agent did not place the "formal order to bind coverage" until the next day highlights the fact that the authorization was not the last step to completing a contract  (DE 82-1).

from "December 31, 2007 to December 31, 2008").[7]

Based on the foregoing, the Court concludes that the last act necessary to create an insurance contract occurred in New York when the insurers' agents accepted Plaintiff's agent formal offer to bind coverage.

## II.     Delivery as the Last Act

Rejecting the "fact-intensive" approach to the "last act" inquiry,[8] Plaintiff argues that Florida law dictates that the last act of contract formation is the actual delivery of the policy to the insured.  (DE 86 at 2).  This Court, like others, acknowledges that in many cases, courts have found that the place where an insurance contract was executed is the place where the policy was delivery.  See, e.g., Nat'l Trust Ins. Co. 916 F. Supp. 2d at 1252.  However, other considerations lead the Court to conclude that the place of delivery is not invariably the locus contractus in Florida.

For all Plaintiff's efforts, it has not identified a Florida case holding, in the context of an

---

[7] In arguing that the "last act" must be delivery of the policy itself, Plaintiff points out that binders are merely contracts for "temporary" insurance. (DE 86 at 4 n.4).  While this may be true, the emails recounted above show that offer and acceptance was based on the full terms of the entire policy.  The insurers' agents accepted Plaintiff's agent's offer to purchase insurance on the stated terms; the fact that this acceptance was memorialized by the immediate issuance of a binder, rather than a formal policy, does not change the conclusion that the acts necessary to give rise to a binding insurance contract had occurred.  See In re The Celotex Corp., 194 B.R. at 673 n.5 ("A contract of insurance is ordinarily complete and closed when the binder is signed and delivered."); see also Prime Ins. Syndicate, 363 F.3d at 1093 (holding that "communication of . . . oral binder" constituted acceptance of "offer to purchase insurance," "before the written policy was actually delivered").

[8] Plaintiff argues that the "fact-intensive inquiry" is only applied by courts in the Middle District of Florida, and that those courts deviate from the "last act" principles recognized by the Supreme Court of Florida.  (DE 86 at 2, 4, 7).  Plaintiff fails to note, however, that the Eleventh Circuit also stated that the inquiry into where the last act occurred is "fact-intensive."  Prime Ins. Syndicate, Inc., 363 F.3d at 1092-93.

insurance contract's locus contractus, that the delivery of the policy to the insured is always the last act essential to contract formation. Some states' law is clear in this regard;[9] however, the Court has not located a Florida case standing for the rigid proposition that the locus contractus is always the place where the contract was delivered.

Several federal appellate decisions indicate that delivery is not necessarily the "last act" under Florida's lex loci contractus doctrine. First, there is Prime Insurance Syndicate, in which the Eleventh Circuit stated that the "last act necessary to complete a contract is the offeree's communication of acceptance of the offer." 363 F.3d at 1093. The court held that this "last act" occurred "before the written policy was actually delivered." Id. Second, there is the case of Shapiro v. Associated International Insurance Company, in which the Eleventh Circuit applied Florida's lex loci contractus rule to conclude that California law applied "because the contract was issued and countersigned in California through a California broker." 899 F.2d 1116, 1119 (11th Cir. 1990). Although this statement is dicta because the court held that lex loci contractus did not apply, it is notable that the Eleventh Circuit did not mention "delivery" of the policy in its examination of Florida's "traditional choice of law rule." Id. Finally, in a decision somewhat removed in time, the former Fifth Circuit recognized that a "contract of insurance may arise without the delivery of the policy or prepayment of the premium if the parties so intend."[10]

---

[9] For example, regarding the locus contractus of insurance contracts, "Georgia law provides that the last act essential to the completion of the contract is delivery." Johnson v. Occidental Fire & Cas. Co., 954 F.2d 1581, 1584 (11th Cir. 1992); see also Travelers Prop. Cas. Co. of Am. v. Moore, 763 F.3d 1265, 1271 (11th Cir. 2014) ("Under Georgia law, an insurance contract is 'made' where it is delivered.").

[10] As one Florida intermediate appellate court has recognized, a "binding contract of insurance" may be entered before "written evidence thereof is made up in the office of the insurer or its agent or manually delivered to the insured." Sanders v. Nat'l Cas. Co., 157 So. 2d 436, 439

Harris v. Travelers Ins. Co., 80 F.2d 127, 128 (5th Cir. 1935) (applying Texas law, but not limiting this general statement to any particular state's law).

To be sure, Plaintiff has identified numerous cases that apparently equate delivery of an insurance policy with its execution. (DE 82 at 3-7; DE 86 at 2-5). However, many of these cases note only that the "place where a contract was executed is generally considered to be the place were the policy was delivered." Creative Hospitality Ventures, Inc. v. U.S. Liability Ins. Co., 655 F. Supp. 2d 1316, 1324 (S.D. Fla. 2009) (internal quotation marks omitted) (emphasis added); see also Sparta Ins. Co. v. Colareta, 990 F. Supp. 2d 1357, 1362 (S.D. Fla. 2014) ("generally considered");[11] Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co., 165 F. Supp. 2d 1332, 1335 (S.D. Fla. 2001) ("generally considered"). In other cases, the discussion concerning the place of delivery as the locus contractus was dicta because the parties agreed on which state's law applied. See Gen. Fid. Ins. Co. v. Foster, 808 F. Supp. 2d 1315, 1319 (S.D. Fla. 2011); Creative Hospitality Ventures, Inc., 655 F. Supp. 2d at 1325; Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006). But most notably, none of these cases analyzed the issue of whether delivery would be considered the last act if circumstances indicated that a fully consummated insurance contract existed before delivery occurred. See Embroidme.com, Inc. v. Travelers Prop. Cas. Co. of Am., 992 F. Supp. 2d 1259, 1263 (S.D. Fla. 2014) (Marra, J.) (applying Florida law because it "appear[ed]" that the contract was executed in Florida because it listed mostly Florida addresses, and because the "parties rel[ied] on cases that

---

(Fla. Dist. Ct. App. 1963).

[11] Plaintiff omits this qualifying phrase when it quotes Sparta Insurance. (DE 86 at 2; DE 126-1 at 3) ("In a case involving an insurance policy, the place where the contract is executed is . . . 'the place where there policy is delivered.'").

apply Florida law"); CAE USA, Inc. v. XL Ins. Co., No. 11-CV-64-T-24, 2011 WL 1878160, at *2 (M.D. Fla. May 17, 2011) (generally stating that Canadian law applied to policy delivered in Canada, then turning to public policy exceptions to lex loci contractus); Royal Surplus Lines Ins. Co. v. Delta Health Grp., Inc., No. 03CV419-RS, 2006 WL 167565, at *2 (N.D. Fla. Jan. 23, 2006) (finding that delivery was last act without discussion); see also Nyberg v. Cryo-Cell Int'l, Inc., No.11-CV-399-T-30, 2013 WL 5408447, at *5 (M.D. Fla. Sept. 25, 2013) (distinguishing Royal Surplus Lines because the contract at issue was not an insurance contract).

In all, the cases cited by Plaintiff stand for the proposition that "[t]he delivery of the policy can constitute the 'last act' necessary to execute a contract." AIG Premier Ins. Co. v. RLI Ins. Co., 812 F. Supp. 2d 1315, 1319 (M.D. Fla. 2011) (emphasis added); (see DE 86 at 4) (Plaintiff stating that RLI Ins. Co. applied "place of delivery test"). "However, '[t]he determination of where a contract was executed is fact-intensive, and requires a determination of 'where the last act necessary to complete the contract [wa]s done.'" RLI Ins. Co., 812 F. Supp. at 1319 (citing Prime Ins. Syndicate, 363 F.3d at 1092-93)). The cases that have analyzed whether the last act of contract formation must be delivery have rejected that notion. See Nat'l Trust Ins. Co., 916 F. Supp. 2d at 1252 ("[R]elevant cases have made clear that, while the place of delivery of the policy may be the place that the policy was deemed to be executed, it is not necessarily the place that the policy was executed.") (citing RLI Ins. Co., 812 F. Supp. 2d at 1319) (emphasis in original); CNL Hotels & Resorts, Inc., 505 F. Supp. 2d at 1321 ("Under Florida law, the important factor is the place of execution of the contract, not the place or places to which it was (eventually) mailed."); In re Celotex Corp., 194 B.R. at 674 (review of Florida cases revealed that "none of them hold the act of delivery is the last act necessary to complete a contract").

Whatever merit might exist for the adoption of a rule in Florida that the <u>locus contractus</u> of an insurance policy always be the place where it is delivered, as it stands now, the "determination of where a contract was executed is fact-intensive, and requires a determination of where the last act necessary to complete the contract was done." <u>Prime Ins. Syndicate</u>, 363 F.3d at 1092-93 (internal quotation marks and alteration omitted).  This determination would not be "fact-intensive" if the only factual consideration was where the contract was ultimately delivered.  Delivery may be a necessary condition to contract formation under some insurance contracts; however, Plaintiff does not argue that the effectiveness of the insurance contracts at issue was in any way dependent on delivery of the policies to the insured.[12]  Where the facts indicate that a fully consummated contract existed prior to delivery of the policy, the last act for contract formation may be found prior to delivery.  <u>See</u> <u>Prime Ins. Syndicate</u>, 363 F.3d at 1093.

### III.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Choice of Law Determination (DE 82) is **DENIED** insofar as it seeks a determination that Florida law applies to the substantive issues in this insurance coverage action; Defendant's

---

[12]  The Eleventh Circuit has held that where the "last act" of contract formation occurs may depend on the conditions and contingencies imposed within the insurance application. <u>See</u> <u>Fioretti v. Massachusetts Gen. Life Ins. Co.</u>, 53 F.3d 1228, 1236 (11th Cir. 1995) (because insurance policy was contingent on execution of statement of good heath, last act of contract formation occurred in New Jersey, where statement was executed); <u>see also</u> <u>Equit. Life Assur. Soc. v. McRee</u>, 78 So. 22, 24 (Fla. 1918) ("A life insurance policy which by its terms does not become a completed contract until delivery on payment of first premium is to be construed as a contract made in the state where the first premium is paid and the policy delivered . . . .").  In an unpublished decision, this Court concluded that a life insurance policy was executed upon delivery because the application conditioned coverage on delivery and the insured retaining the policy for 30 days.  <u>See</u> (DE 69 at 5-6 of No.13-cv-80479, <u>Alvin Gelfound v. Metlife Ins. Co.</u> (S.D. Fla. 2015) (Marra, J.)).

Motion to Strike (DE 87) is **DENIED AS MOOT**; Plaintiff's Motion to Strike or for Leave to File a Response (DE 126) is **GRANTED**; Plaintiff's response to Defendant's supplement (DE 126-1) was considered accordingly.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 5th day of August, 2015.

_____
KENNETH A. MARRA
United States District Judge