**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

WEST PALM BEACH DIVISION

CASE NO. 12-81397-CIV-MARRA/MATTHEWMAN

SUN CAPITAL PARTNERS, INC.,

    *Plaintiff*,

v.

TWIN CITY FIRE INSURANCE
COMPANY,

    *Defendant.*

_____

## TWIN CITY'S MOTION FOR ATTORNEY'S FEES

Defendant Twin City Fire Insurance Company hereby moves, pursuant to Federal Rule of Civil Procedure 37(a)(5), for an apportionment of $396,646.19 as its reasonable expenses incurred in prevailing on its Motion to Compel (D.E. 54).

## I. INTRODUCTION

Plaintiff Sun Capital Partners, Inc. spent over fifteen months unsuccessfully contesting the arguments in Twin City's motion regarding the common-interest privilege, the at-issue doctrine, and, finally, work product. Dissatisfied with the Court's April 22, 2015 Order (D.E. 147) that agreed with substantially all of Twin City's arguments, Sun objected to that Order and engaged in a tenacious rearguard action. (D.E. 156.) On December 18, 2015, after multiple hearings, two *in camera* submissions, four supplemental briefs, and numerous new privilege logs and assertions, Sun's last remaining objection—that it anticipated litigation two years before both hiring litigation counsel and filing suit—was rejected. (D.E. 243.) Like most of its objections, this final objection was certain to fail; the Court had already told Sun that it had failed to meet its evidentiary burden to show that it reasonably anticipated litigation by September 2, 2010. The only remaining issue to be resolved was at what point near the coverage denial that date would be, not whether Sun would somehow prevail on a motion lacking any evidentiary basis. Not surprisingly, the work product date remained November 2, 2012.

- 1 -

These futile efforts were not without consequences, both to the Court investing substantial time considering Sun's repetitive motions, and to Twin City being forced to expend substantial funds responding to Sun's multiple attacks. Fairness and justice, the foundation for cost-shifting under Rule 37 of the Federal Rules of Civil Procedure, call for reimbursement to Twin City under these circumstances.

### The Related Motions

In addition to Sun's efforts in response to the initial Motion to Compel, in related filings, Sun sought to quash third-party discovery (D.E. 55-56), in part, on similar (and similarly failing) grounds as asserted in defense of Twin City's motion to compel. The Magistrate Court rejected Sun's arguments in its December 3, 2014 Order (D.E. 88). That Order, which resolved the common-interest and at-issue doctrines in Twin City's favor, should have cut short the lion's share of the motions practice at issue here. But, as has been the case at nearly every step of this litigation, Sun refused to accept a ruling that required it to produce documents. Sun's objections to the Magistrate Court's rulings on Twin City's motions to compel, combined with Sun's objections to the orders on its motions to quash, forced Twin City to re-litigate the common-interest doctrine, the at-issue doctrine, and work product in front of the District Court on four fronts (*See* D.E. 94, 156, 168, and 189 (Sun's Objections to the Magistrate Court's discovery rulings). Twin City prevailed in each instance, (D.E. 191, 208, 243), but at substantial cost.

Thus the extensive procedural history here was driven by Sun, and "a party cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the opposing party in response." *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2013 WL 6238647, at *5 (S.D. Fla. Dec. 3, 2013).

Twin City seeks relief under the cost-shifting mechanism of Rule 37(a)(5), a rule that is prophylactic in nature. It is designed to prevent parties from entrenching themselves in unsuccessful and dilatory discovery disputes. Indeed, "the great operative principle of Rule 37(a)(5) is that the loser pays." *Procaps*, 2013 WL 6238647, at *4 (quoting 8B Charles Alan Wright, Arthur Miller & Richard Marcus, *Federal Practice and Procedure* § 2288 (3d ed.

2010)). As the prevailing party, Twin City asks that the Court apportion its expenses to Sun—the party whose actions necessitated the Motion to Compel and the myriad of subsequent sister filings, and the party who then refused to accept the Court's rulings on those filings.

### Cost-Shifting is Appropriate

Rule 37(a)(5) is not a discovery sanction, it is a cost-shifting mechanism, and thus no finding of bad faith is necessary to apportion expenses. Nevertheless, Sun's discovery tactics necessarily color this analysis in that direction. These tactics, including, among other things, submitting nearly 20 different privilege logs aggregating to over 9,000 pages, injecting new work-product arguments months after its original work-product response, and moving for additional relief in Court-ordered supplemental briefs, demonstrate Sun's conscious efforts to obstruct the discovery process at great expense to Twin City. Indeed, Sun itself told this Court that, as of April of 2015, it had "already expended more than a million dollars in fees and costs in this litigation, the bulk of which has been spent on addressing discovery issues raised by Twin." (D.E. 141 at 2-3.) Sun's efforts, as outlined herein, were repetitive, unjustified, and ultimately unsuccessful.

### Sun's Misleading Indications of What was At Issue

In January of 2016, just weeks after the final December 18 Order regarding work product, Sun, for the first time, disclosed that recent rounds of supplemental briefings on work product, and this Court's time in deciding this last motion, were largely an academic exercise. Unbeknownst to Twin City, Sun claimed at that time that close to 99% of the documents still being withheld, solely on the basis of work product, were merely duplicates of documents already produced by Sun. Specifically, Sun's counsel claimed to counsel for Twin City that:

> The documents remaining on the log showing WP [work product] only as a basis to withhold after a first cut review appear to be duplicates of documents you already have. We have found three documents after a re-review of roughly half of the withheld documents which we need to confirm independently are duplicates.

(January 8, 2016, email from H. Lumpkin to D. Forestner, attached as **Exhibit A**.) At the time of the December 18 Order, Sun listed 310 such entries on its privilege log withheld solely on the

- 3 -

104422908.2

basis of work product. Yet, in January, after losing its work-product argument (again), Sun revealed that there actually are no documents to produce. Sun gave no rationale as to why it did not disclose this fact earlier in light of four supplemental briefs, a telephonic hearing, and an *in camera* review on the sole basis of Sun's work product assertions. Nor does Sun explain why it continues to withhold more than thirty pre-November 2, 2012, documents solely on the basis of work product. Only after Sun received a draft of this motion did it abandon its duplicates argument, shifting now to assert that Sun has no obligation to comply with Court orders until *Twin City* specifically identifies Sun's noncompliance. Rule 37(a)(5) is not a sanction, but Sun's actions provide no justification for avoiding its cost-shifting mechanisms.

## II.  BACKGROUND RELEVANT TO THIS MOTION

When Twin City agreed to a Confidentiality Order (D.E. 27) and then a further Non-Waiver Agreement (D.E. 43) six months after serving discovery, it anticipated that the discovery disputes over privileges would be minimized. Yet, six months after that, Twin City would begin a fifteen-month odyssey from its original motion to compel to the final December 18, 2015, Order regarding Sun's work-product assertions. That ordeal was replete with objections, teleconferences, oral arguments, *in camera* submissions, submissions of supplemental authority, related filings, supplemental briefs, status reports, and review by Judge Marra. But, when the dust settled, Twin City prevailed on all but one of its arguments in its motion to compel, and it prevailed on every subsequent objection lodged by Sun.

Twin City prevailed despite Sun expending substantial amounts of time and formidable resources combatting the Court's April 22 Order and despite Sun's submission of fifteen different privilege logs between the motion to compel and the December 18, 2015 Order. And only recently—weeks after the December 18 Order, did Sun claim that over 99% of the documents Sun continues to withhold on the sole basis of work product are actually duplicates already in Twin City's possession—a revelation that, if true, could have curtailed drastically the substantial expenses incurred disputing Sun's unfounded work-product assertions. As the factual history bears out, an apportionment against Sun is thus merited.

### A. Twin City Prevailed on Substantially All of Its Arguments in Its Motion to Compel

On September 3, 2014, after months of negotiations, Twin City filed a motion to compel the production of documents against Sun (D.E. 54.) Twin City sought the compulsion of third-party communications and litigation status reports, arguing that those documents were being improperly withheld because:

- Sun did not reasonably anticipate litigation until November 2, 2012 (D.E. 54 at 4);

- Communications between Sun and its broker, Marsh, were third-party communications bereft of attorney-client privilege (*Id.* at 4);

- Marsh's communications constituted business—not legal—advice (*Id.* at 3-4)

- Twin City shared a common-interest with Sun in defending the underlying litigation (*Id.* at 4-5);

- Twin City shared a common-interest with Sun related to Sun's insurance coverage (*Id.* at 5);

- Sun placed what it settled the underlying litigation for (and why) at issue in this action (*Id.* at 5);

- Sun placed the allocation of the defense fees and settlement of the underlying action at issue here (*Id.*); and

- Sun placed its purported payment of defense fees and the settlement of the underlying litigation at issue here (*Id.*)

Before ruling on Twin City's motion, the Court guided the parties through a "fairly lengthy and involved" meet and conferral process. (D.E. 147 at 4.) That process included a September 19, 2014, oral argument, an October 21, 2014, joint-status report (D.E. 79), a December 18, 2014, telephonic hearing (D.E. 91), a second joint-status report (D.E. 104), an in camera review of "5 large binders of documents and 3 large binders of privilege logs" (D.E. 147 at 1 n. 1), and a third joint-status report (D.E. 116). After it "spent an extensive amount of time in an effort to resolve [the] discovery dispute," the Court agreed with substantially all of Twin City's arguments:

| **Twin City's Argument:** | **Court's Ruling in April 22 Order (D.E. 147):** |
|---|---|
| Sun did not anticipate litigation with Twin City until November 2, 2012 | Agreed |
| Marsh communications were third-party communications | Did Not Rule[1] |
| Marsh was a business advisor, not a legal advisor | Did Not Rule (same as above) |
| Twin City shared a common-interest in defending the underlying litigation | Agreed |
| Twin City shared a common-interest with Sun related to Sun's insurance coverage | Denied |
| Sun placed the settlement of the underlying litigation at issue | Agreed |
| Sun placed allocation at issue | Agreed |
| Sun placed payment of fees and the settlement at issue | Agreed |

(D.E. 147) Thus the Court agreed with Twin City (or viewed a ruling as unnecessary in light of Twin City's other arguments) for seven of Twin City's eight arguments.

**B.    Sun Objected to the April 22 Order Without Success**

Faced with the specter of producing withheld documents, Sun objected to the adverse rulings in the April 22 Order. Specifically, Sun asserted that the Order was clearly erroneous and contrary to law in its determinations that Twin City shared a common interest with Sun, that Sun did not reasonably anticipate litigation until November 2, 2012, and that Sun placed payment, allocation, and settlement at issue. (D.E. 156.) On August 11, 2015, the District Court affirmed that Sun placed payment, allocation, and settlement at issue, and it affirmed that Twin City shared a common interest with Sun in defending the underlying litigation. (D.E. 208.) But it was "unable to say" whether the April 22 Order regarding work product was based on an inapplicable standard. (D.E. 208 at 6.) Consequently, the matter was referred back to Magistrate Judge Matthewman for "a routine work-product analysis, deciding whether Plaintiff has met its burden of demonstrating that the withheld documents were prepared in anticipation of litigation." (D.E. 208 at 6.)

As part of that analysis, Judge Matthewman asked for supplemental memoranda regarding Sun's work-product assertions. (D.E. 214.) As part of its supplemental briefing, Sun also moved for permission to submit new documents—more than a year after Sun's initial

---

[1] Ruling deemed unnecessary "[d]ue to the fact that the Court is finding that a limited waiver of attorney-client privilege existed" (D.E. 147 at 13 n.8)

obligation to respond to the motion to compel—for *in camera* review. (D.E. 239.) After a November 20, 2015, telephonic hearing, Judge Matthewman agreed to the *in camera* review. (D.E. 242.) In its December 18, 2015, Order, the Court rejected Sun's work-product contentions, concluding that Sun "failed to meet its burden of showing that it reasonably anticipated litigation on September 2, 2010 or in February, 2011, or that documents created prior to November 2, 2012 are protected by the work product privilege." (D.E. 243 at 12-13.) Thus the last of Sun's objections to the April 22 Order was rejected in its entirety.

C. **Sun's Related Filings Forced Twin City to Re-assert its Motion-to-Compel Arguments on Multiple Fronts**

Sun's related filings—its motion to quash subpoenas to certain non-parties (D.E. 55); its motion to quash subpoena to underlying primary insurer Houston Casualty Company (D.E. 56); and its defense to Twin City's second motion to compel (D.E. 112)—constituted second, third, and fourth attempts at the same failed arguments. In its first motion to quash, Sun argued that documents related to the primary insurer (documents demonstrating key issues such as allocation agreements, settlement, and exhaustion) were in fact irrelevant and thus not at issue. (D.E. 55 at 4-5.) In its second motion to quash, Sun argued that documents in possession of Sun's co-defendants in the underlying litigation should not be produced because Sun did not share a common interest with those entities and because documents that pre-dated March 27, 2012 "ha[ve] no bearing on the issues in this case." (D.E. 56 at 4-8.) Sun's defense of Twin City's second motion to compel should have heeded Judge Matthewman's previous December 3, 2014 Order concluding that Sun shared a common interest with Twin City in defending the underlying litigation and that the nature of the insurance policy, the payment of the settlement amount, and allocation were all "at issue." (D.E. 88.) But instead, Sun doubled down on its arguments on common interest and "at issue"—ignoring the text of the Order and spinning its argument as Twin City's *misinterpretation* of the December 3 Order. (*See, e.g.*, D.E. 112 at 2 ("Twin's primary argument for discovery of Sun's joint defense communications is based on an erroneous interpretation of the December 3, 2014 Order.").)

104422908.2

Twin City prevailed against each of Sun's rehashed arguments. (D.E. 88, 162, and 180.) But Sun *again* refused to accept these rulings, objecting to each one. (D.E. 94, 168, and 189.) Sun argued that those orders were erroneous for the same reasons that it argued the April 22, 2014 Order on Twin City's motion to compel was erroneous, namely, that the Court's conclusions regarding the common-interest and at-issue doctrines and work product protection were incorrect. By its last objection, Sun admitted that "[t]he issues raised by the June 16, 2015 Order [D.E. 180] have been fully briefed multiple times." (D.E. 189 at 2.) It then incorporated its filings at docket entries 56, 57, 70, 94, 112, 115, 117, 156, 168, 179, and 182. (*Id.*) Docket entries 156 and 179 are Sun's objection and reply to the April 22, 2015 Order on Twin City's motion to compel.

Sun did not seek a stay in discovery pending the outcome of its objections. It did not seek to consolidate the briefing or expedite its objections. Instead, it opposed any extension of discovery deadlines despite its refusal to produce documents in compliance with the Magistrate Court's discovery orders. (D.E. 142.) Had Sun abided by the Magistrate's rulings, or had Sun sought to stay discovery or consolidate/expedite the objections, substantial expense could have been avoided. But Sun took no such action.

These related filings, at bottom, were unnecessary for both the Court and Twin City. Their only necessity lay in Sun's dogged and continued determination not to reveal the facts at the heart of this dispute. Sun's second motion to quash (D.E. 56) paints the picture all too well. Faced with the prospect of Sun's ongoing discovery obfuscation, Twin City opted to seek documents related to settlement and defense fees from Sun's co-defendants in the underlying litigation. Sun—not the subpoenaed parties—filed a motion to quash. Sun stated: "[n]ow, through the device of subpoenas, *Twin City seeks to do indirectly what Sun armed with supporting precedent has thwarted it from doing directly*, seeking all materials from Sun's co-defendants that it was unable to obtain from Sun." (D.E. 56 at 3 (emphasis added).) A desire to improperly thwart discovery efforts is not justification for avoiding the cost-shifting of the fees incurred combatting those failed efforts.

**D. Sun's Discovery Tactics Throughout the Fifteen Months Created Substantial Additional Expense**

Twin City's efforts to distill for the Court Sun's (improper) assertions of privilege were hindered by Sun's discovery practices, which in turn greatly increased the expenses Twin City incurred in prosecuting its successful motion to compel.

**1. Sun's eighteen—often times disparate—privilege logs regularly forced Twin City to re-analyze Sun's privilege assertions.**

The numerous privilege logs produced to Twin City during this dispute are a prime example of Sun's discovery obfuscation that necessitated increased time and expense. When Twin City brought its motion to compel on September 3, 2014, Sun had at that point provided Twin City with three separate privilege logs—not updated privilege logs, but, rather, disconnected logs with their own individual entries. Those privilege logs contained an aggregate of 1,611 entries. Six days after Twin City's motion to compel, Sun provided its first "consolidated" privilege log. That log contained 1,392 entries. Over the next fifteen months, Sun provided fourteen additional privilege logs, which—taken together with the four already produced—amounted to eighteen different privilege logs produced before the December 18, 2015 Order.[2] Some of these logs were consolidated, others were not:

| Date | Document Name | Pages | Entries |
|---|---|---|---|
| Apr. 23, 2014 | Privilege/Redaction Log | 57 | 457 |
| May 15, 2014 | Privilege Log | 74 | 420 |
| June 25, 2014 | Second Supplemental Privilege Log | 36 | 734 |
| Sept. 9, 2014 | Consolidated Privilege Log | 227 | 1392 |
| Oct. 14, 2014 | Privilege/Redaction Log | 66 | 460 |
| Nov. 26, 2014 | First Supplement to Consolidated Privilege Log | 423 | 2328 |
| Nov. 26, 2014 | Second Supplement to Consolidated Privilege Log | 55 | 343 |
| Nov. 26, 2014 | Third Supplement to Consolidated Privilege Log | 378 | 2235 |
| Nov. 26, 2014 | Fourth Supplement to Consolidated Privilege Log | 156 | 965 |
| Nov. 26, 2014 | Fifth Supplement to Consolidated Privilege Log | 51 | 606 |
| Nov. 26, 2014 | Sixth Supplement to Consolidated Privilege Log | 14 | 100 |
| Nov. 26, 2014 | Revised Consolidated Amended Privilege Log | 238 | 1392 |
| March 3, 2015 | Consolidated Privilege Log | 1365 | 8031 |
| Apr. 14, 2015 | Amended Consolidated Privilege Log | 1404 | 8343 |
| June 19, 2015 | Second Amended Consolidated Privilege Log | 1287 | 8343 |

---

[2] Since the December 18 Order, Sun has produced its nineteenth, twentieth, twenty-first, twenty-second, and twenty-third iterations of the privilege log, which are reflected in the chart below.

| Date | Document Name | Pages | Entries |
|---|---|---|---|
| Sept. 4, 2015 | Third Amended Consolidated Privilege Log | 1285 | 8343 |
| Oct. 14, 2015 | Third Amended Consolidated Privilege Log | 1285 | 8339 |
| Dec. 17, 2015 | Fourth Amended Consolidated Privilege Log | 1289 | 8339 |
| Jan. 4, 2016 | Fourth Amended Consolidated Privilege Log | 1285 | 8343 |
| Jan. 14, 2016 | Fifth Amended Consolidated Privilege Log | 775 | 4917 |
| Jan. 19, 2016 | Fifth Amended Consolidated Privilege Log | 554 | 3524 |
| Feb. 5, 2016 | Sixth Amended Consolidated Privilege Log | 559 | 3653 |
| Feb. 18, 2016 | Seventh Amended Consolidated Privilege Log | 505 | 3261 |

(Decl. of David Forestner attached as **Exhibit B,** ¶ 35.)

In addition to the sheer number of privilege logs, Sun began crossing through entries of produced documents instead of removing them from the log entirely. The result was Twin City's continued receipt of unwieldy, 1,000+ page, privilege logs with hundreds, and later thousands, of entries crossed out. To compound matters, on multiple occasions Sun produced new privilege logs only slightly in advance of Twin City's deadlines regarding this discovery dispute:

| Date of New Privilege Log | Date of Twin City's Deadline | Twin City's Obligation |
|---|---|---|
| Sept. 9, 2014 | Sept. 19, 2014 | Oral Argument (D.E. 67) |
| Oct. 14, 2014 | Oct. 21, 2014 | Status Report (D.E. 79) |
| June 19, 2015 | June 26, 2015 | Response to Sun's Objections to the April 22 Order (D.E. 167) |
| Oct. 14, 2015 | Oct. 22, 2015 | Twin City's Supplemental Brief re Work Product (D.E. 238)[3] |

These short-order productions forced rushed reviews in advance of Twin City's deadlines and added to the unwieldy nature of Sun's privilege assertions.

### 2. Sun changed its legal arguments throughout the briefings, requiring Twin City to analyze and rebut new issues.

Adding to Twin City's expense, Sun consistently added new arguments with each additional brief, ignoring whether it had raised the issue in its original response to Twin City's motion to compel. Sun limited its initial work-product response to arguing that it reasonably anticipated litigation on September 2, 2010, submitting in support an email from September 2, 2010, and the parties formal coverage letters. (D.E. 57 at 4.) But by the time supplemental briefing had completed, Sun had injected numerous new defenses and purported support. It

---

[3] Sun submitted privilege logs in advance of deadlines in other discovery disputes as well (*e.g.*, Sun's April 14, 2015, privilege log submitted one day before the April 15, 2015, hearing on Twin City's motion to stay discovery (D.E. 146)).

- 10 -

argued that its negotiation of a confidentiality agreement with Twin City demonstrated the parties anticipated litigation. (D.E. 229 at 4.) It argued that hiring coverage counsel demonstrated its anticipation of litigation (despite taking the opposite approach against Twin City). (D.E. 229 at 8.) Sun argued that the stakes in the underlying litigation showed that litigation was imminent. (D.E. 229 at 9.) And it argued for the first time in its reply to its supplemental brief about opinion work product. (D.E. 234 at 6.) These newly injected issues (and others raised throughout the course of these briefs) necessarily required a response from Twin City.

### 3. Sun asserted that over 99% of the documents being withheld solely on the basis of work product are duplicates of documents already in Twin City's possession.

In a January 7, 2016 telephone conference, over two weeks after the December 18 Order regarding work product, counsel for Sun disclosed for the first time that the work-product briefings potentially were moot, asserting over 99% of the disputed documents are, in fact, duplicates that have already been produced. (**Ex. B**, ¶¶ 38-42.) Sun's counsel confirmed that conversation in an email the next day:

> The documents remaining on the log showing WP [work product] only as a basis to withhold after a first cut review appear to be duplicates of documents you already have. We have found three documents after a re-review of roughly half of the withheld documents which we need to confirm independently are duplicates.

(**Ex. A**.) There were 310 documents being withheld solely on the basis of work product on the latest log as of January 7. Sun's January 7 revelation was the first notice given to Twin City that these documents were duplicates of other documents already produced. (**Ex. B** ¶ 40.) The supplemental briefs regarding Sun's work product protections could have been much more limited in scope, and may even have been unnecessary. (*See id.*, ¶ 41.) Yet, even now (and contrary to that representation), on Sun's twenty-third log, Sun continues to withhold pre-November 2, 2012, documents on the sole basis of work product. Sun gives no explanation, because there can be none.

**4.    Sun now argues that it has no obligation to comply with Court orders until Twin City identifies Sun's noncompliance.**

After receiving a draft of this motion in accordance with Local Rule 7.3, Sun appears to have abandoned its claim that the documents withheld on the privilege log on the basis of work product are mere duplicates of documents produced elsewhere. Now, Sun claims that it has no obligation to comply with Court orders until Twin City specifically points to Sun's noncompliance. On February 17, 2016, Sun claimed that though it purportedly is "not trying to shirk" its obligation to comply with Court orders, "Twin has an obligation to identify documents from the privilege log which [Twin] thinks should be produced; [Sun] cannot guess at this." (**Ex. B** at **Ex. 4**.) At bottom, Sun's prolific briefings and shifting tactics have been implemented for one common purpose:  to avoid producing relevant, at-issue documents that go to the heart of this dispute. Despite Sun's tactics in its "million dollar battle" fighting "discovery issues raised by Twin," Twin City has prevailed on nearly every issue raised in its September 3, 2014, motion to compel, the last of which was finally resolved by the Court's December 18, 2015 Order. Twin City now moves for apportionment of its expenses to Sun under Rule 37(a)(5).

### III.  LEGAL ARGUMENT

**A.    Rule 37(a)(5) Was Designed to Discourage a Party from Engaging in Expensive Drawn-out Discovery Disputes When Its Assertions Lack Merit**

Rule 37(a)(5) is a rule of consequence. Its expense-shifting mechanism is not "a sanction or the imposition of discipline or an indication that anyone acted in bad faith. Rather, it is merely a consequence of taking certain unsuccessful discovery positions." *Procaps*, 2013 WL 6238647, at *17 n. 10 (emphasis omitted). The purpose of Rule 37(a)(5) is to encourage parties to avoid expensive discovery disputes based on tenuous grounds; ultimately, "the great operative principle of Rule 37(a)(5) is that the loser pays." *Id.* at *4 (quoting 8B Charles Alan Wright, Arthur Miller & Richard Marcus, *Federal Practice and Procedure* § 2288 (3d ed. 2010)). And, as here, "[i]f the motion is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

With respect to permissibly apportioned expenses, "a near 'but for' relationship must exist between Federal Rule of Civil Procedure Rule 37 violations and the activity for which fees and expenses are awarded." *Procaps*, 2013 WL 6238647, at *15. But provided the 'but for' test is met, then the Court may apportion expenses for any work "that is useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Id.* Here, Twin City requests apportionment of the fees it incurred securing each of the Orders stemming from its September 3, 2014, Motion to Compel (D.E. 54).

B. **The Fact That Sun Has Removed Certain Documents From Its 8,200-Document Privilege Logs Is Of No Import In This Analysis**

On September 3, 2014, the date of Twin City's motion to compel, Sun had provided Twin City with three separate privilege logs with an aggregate total of 1,611 entries. That total mushroomed to 8,216 entries in later privilege logs. Sun has since removed from its privilege log approximately 3,000 documents. It is of no import that many of these documents were either duplicates or enjoyed no privilege to begin with, just as it is of no import that the documents were removed at all. In its apportionment analysis, a Court may overlook "disclosure[s] or requested discovery [that] is provided **after** the motion was filed.'" *Procaps*, 2013 WL 6238647, at * 6 (emphasis in original). That is because those documents may never have been disclosed but for the motion. As the chart above demonstrates, the vast majority of Sun's roll-off productions occurred after the April 22, 2015 Order.

C. **The Expenses Incurred by Twin City were Necessary to Combat Sun's Unsuccessful but Lengthy Discovery Challenges, Appeals, and Supplemental Briefs**

Twin City seeks to shift a portion of the financial burden of this long dispute onto Sun— the party that unsuccessfully challenged Twin City's privilege arguments. Twin thus seeks $396,646.19 in necessary attorney's fees. The attorneys' fees, broken down by timekeeper, are as follows:

| Name | Title | Years of Experience | Hourly Rate | Hours Billed | Aggregate Expense |
|---|---|---|---|---|---|
| Dave Leonard | Partner | 41 | $415 | 90.7 | $37,230.69[4] |
| Joe Ianno | Partner | 29 | $405 | 36.5 | $14,782.50 |
| David Forestner | Partner | 15 | $325 | 546.6 | $178,640.12 |
| Justan Bounds | Associate | 5 | $275-295 | 483.8 | $135,606.88 |
| Fred Rushing | Associate | 1 | $245 | 86.4 | $21,168.00 |
| Laura Neubauer | Paralegal | 10 | $130 | 74.4 | $9,218.00 |

(**Ex. B** ¶ 43-47.) Each of the attorney timekeepers' website bios are attached as compilation **Exhibit C**.

These fees were incurred undertaking the following tasks, among others:

- Drafting the original motion to compel;
- Responding to two motions to quash;
- Negotiating and drafting multiple joint-status reports;
- Holding numerous meet-and-confers via telephone and email;
- Preparing for and attending at least three telephonic hearings with the Court;
- Preparing for and attending oral argument on September 19, 2014;
- Responding to Sun's objection to the December 3, 2014 Order;
- Preparing for and attending oral argument on April 15, 2015;
- Responding to Sun's objection to the April 22, 2015 Order;
- Preparing for and attending oral argument on May 8, 2015;
- Preparing for and attending oral argument on May 22, 2015;
- Responding to Sun's objection to the May 26, 2015 Order;
- Responding to Sun's objection to the June 16, 2015 Order;
- Drafting two supplemental briefs regarding Sun's work-product assertions; and
- Analyzing fourteen separate privilege logs produced by Sun during the briefing process.

The specific billing descriptions are attached to **Exhibit B** as **Exhibit 3.**

---

[4] The totals for Messrs. Leonard, Forestner, and Bounds have been reduced to match Twin City's request for 87.5% of the fees incurred in drafting the motion to compel.

In the parties' good-faith conference, counsel for Sun did not dispute, verbally or in writing, any particular billing entry. (*See* L.R. 7.3(b) ("The respondent shall describe in writing and with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, and shall provide supporting legal authority.")

Because Twin City substantially prevailed on seven of its eight arguments in its Motion to Compel, it moves for an 87.5% apportionment of fees incurred drafting and arguing the Motion. *See Procaps*, 2013 WL 6238647, at \*11 (apportioning 40% of fees where movant was entitled to recovery on 6 of 15 (40%) of its claims and citing supporting cases). Twin City moves for 100% of its remaining fees, as it prevailed against all of Sun's objections.

Twin City's request for $396,646.19 in fees is reasonable. The procedural history of Twin City's Motion to Compel, as noted above, was exhaustive. And by Sun's own account, by April of 2015 it had already "expended more than a million dollars in fees and costs . . . addressing discovery issues raised by Twin." (D.E. 141 at 3.) It was Sun's aggressive defense and failing objections that prolonged this dispute and increased its cost. But, at bottom, "a party cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the opposing party in response." *Procaps*, 2013 WL 6238647, at \*5 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986) (internal bracketing omitted)).

D. **The Rates of Twin City's Timekeepers Are Either Lower Than or Commensurate With Lodestar Rates Previously Accepted in This District**

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by attorneys with reasonably comparable skills, experience, and reputation." *Procaps*, 2013 WL 6238647, at \*12 (quoting *Norman v. Hous. Auth. Of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). "The Court may use its own experience in assessing the reasonableness of attorney's fees and may form an independent judgment either with or without witnesses." *Procaps*, 2013 WL 6238647, at \*12 (citation omitted). Here, Twin City's timekeepers billed at rates aggregating lower than rates previously accepted as Lodestar rates in *Procaps*, which involved a lengthy discovery dispute in a complex litigation that occurred three

104422908.2

years ago. The following chart demonstrates the reasonableness of the hourly rates requested here in comparison to those derived and accepted by the court in *Procaps*:

| Position | *Procaps* Biller | *Procaps* Accepted Rate | Carlton Fields Biller | Requested Rate |
|---|---|---|---|---|
| Senior Partner | Marc Schildkraut | $565 | David Leonard | $415 |
| Senior Partner | Robert Cahill | $515 | Joe Ianno | $405 |
| Junior Partner | Mazda Anita | $395 | David Forestner | $325 |
| Lead Associate | Grace Kwon | $285 | Justan Bounds | $275-295 |
| Associate | Sarah Talkovsky | $330 | Fred Rushing | $245 |
| Paralegal | n/a | n/a | Laura Neubauer | $130 |

The accepted rates in *Procaps* were reduced from the movant's pricey Washington D.C. rates to accommodate "the Court's own knowledge of the local [Miami] market." *Procaps*, 2013 WL 6238647, at *14. No such reduction is necessary here, as the timekeepers' rates are either substantially lower than (at the partner level) or commensurate with (at the associate level) the rates derived by the court in *Procaps*.

E.  **The Good Faith Effort to Resolve These Issues by Agreement Failed**

The parties conferred pursuant to Local Rule 7.3(b). Sun stated that it would not contest the hourly rates in Twin City's Motion. (*See* Ex. B at Ex. 4.) Local Rule 7.3(b) requires that Sun "shall describe in writing and with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, and shall provide supporting legal authority." Sun has not, however, objected to, nor provided any supporting legal authority for, any particular entry. Thus, the only issues that Sun may contest are the timeliness of the motion and Twin City's entitlement to attorneys' fees.

## IV.  CONCLUSION

Rule 37(a)(5) is prophylactic in nature; it is designed to avoid discovery disputes on the front end by giving parties notice of expense-shifting on the back-end. At bottom, it is a rule of consequences; and Sun should face the consequences of its expensive choices here. Twin City respectfully moves this Court for an order apportioning $396,646.19, a fraction of Twin City's

overall expenses incurred due to Sun's discovery tactics, to Sun, and requiring Sun to make payment to Twin City in that amount.

This 29th day of February, 2016.

*/s/ David J. Forestner*
David J. Forestner
Florida Bar No. 0371040
David M. Leonard (*admitted pro hac vice*)
Georgia Bar No. 446625
Justan C. Bounds *(admitted pro hac vice)*
Georgia Bar No. 339789
CARLTON FIELDS JORDEN BURT, P.A.
One Atlantic Center
1201 West Peachtree Street
Suite 3000
Atlanta, Georgia  30309
Telephone:    (404) 815-3400
Facsimile:     (404) 815-3415
Email:  dforestner@cfjblaw.com
            dleonard@cfjblaw.com
            jbounds@cfjblaw.com

Joseph Ianno, Jr.
Florida Bar No. 655351
CARLTON FIELDS JORDEN BURT, P.A.
CityPlace Tower
Suite 1200
525 Okeechobee Boulevard
West Palm Beach, Florida  33401
Telephone:    (561) 659-7070
Facsimile:     (561) 659-7368
Email:  jianno@cfjblaw.com

***Attorneys for Defendant Twin City Fire Insurance Company***

## CERTIFICATE OF COMPLIANCE

Twin City hereby certifies that it has complied with the requirements of Federal Rule of Civil Procedure 37 and Local Rule 7.3(a) and (b) by serving this draft document on opposing counsel in an effort to resolve this dispute without court action. On January 28, 2016, Twin City sent Sun a draft motion for fees that included a draft declaration, individual billing entries, and aggregate billing amounts. The parties held their conference on February 16, 2016, and counsel for Sun memorialized its positions in an email correspondence to counsel for Twin City on the same day. (*See* **Ex. B** at **Ex. 4**.) As that communication shows, Sun does not object to Twin City's counsels' hourly rates. Sun asserted no objection, either verbally or in writing, to any specific billing entry. The parties were unable to narrow any additional issues.

                                      */s/ David J. Forestner*
                                      David J. Forestner

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 29, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List *via* transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ David J. Forestner*
David J. Forestner

104422908.2

## SERVICE LIST

*Sun Capital Partners, Inc. v. Twin City Fire Insurance Company*
Case No.:  12- 81397-CIV-MARRA/MATTHEWMAN
United States District Court, Southern District of Florida

| | |
|---|---|
| R. Hugh Lumpkin, Esq.<br>hlumpkin@vpl-law.com<br>Arya Attari, Esq.<br>aattari@vpl-law.com<br>Tiffany C. McCaffery, Esq.<br>tmccaffery@vpl-law.com<br>Christopher T. Kuleba, Esq.<br>ckuleba@vpl-law.com<br>Ver Ploeg & Lumpkin, PA<br>100 S.E. 2nd Street<br>Thirtieth Floor<br>Miami, FL  33131-2151<br>Phone: 305-577-3996<br>Fax: 305-577-3558 | Michael R. Delhagen, Esq.<br>Co-Counsel for Twin City Fire<br>Tressler LLP<br>One Penn Plaza<br>Suite 4701<br>New York, NY 10119<br>Telephone: 646-833-0900<br>Email:  mdelhagen@tresslerllp.com |

104422908.2