UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-81397-CIV-MARRA

SUN CAPITAL PARTNERS, INC.

    Plaintiff,

v.

TWIN CITY FIRE INSURANCE COMPANY

    Defendant.
_____/

**ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

This Cause is before the Court upon Plaintiff Sun Capital Partners, Inc.'s ("Sun") Motion for Partial Summary Judgment (DE 252) and Defendant Twin City Fire Insurance Company's ("Twin") Motion for Partial Summary Judgment on Indemnity for Sun's Claimed Settlement Payment (DE 280). The motions are fully briefed. The Court held oral argument on January 4, 2018. The Court has carefully considered the arguments of counsel and the entire record and is otherwise fully advised in the premises. For the reasons stated below, Sun's Motion is granted in part and denied in part at this time, and Twin's Motion is denied at this time.

**I.    BACKGROUND**

Twin issued an excess insurance policy to Sun with a $10,000,000 aggregate limit of liability for the policy period from December 31, 2007 to December 31, 2008 ("Policy").[1] Houston Casualty Company ("HCC") issued a primary policy with an aggregate limit of $10,000,000 to Sun for the same policy period.

---

[1] Unless otherwise stated, the term "Policy" refers to the Twin Policy and any incorporated terms of the underlying primary policy issued by Houston Casualty Company.

In September of 2008, a committee of unsecured creditors of Mervyn's (the "Committee") filed a lawsuit (the "Underlying Lawsuit") against Sun and other defendants, claiming, among other things, that certain transactions were consummated while Mervyn's was insolvent or rendered Mervyn's insolvent, resulting in fraudulent conveyances and breaches of fiduciary duty. (DE 250, Pl.'s SOF ¶ 33; DE 295, Def.'s SOF ¶ 33.) Ultimately, Sun and the other defendants entered into a settlement with the Committee ("Settlement Agreement"). (DE 299-6, at 3.)

HCC agreed to pay a portion of the settlement damages and a portion of the defense costs that Sun allegedly incurred as a result of the Underlying Lawsuit, up to the amount available under HCC's $10,000,000 policy limit. Sun has brought this breach-of-contract action against Twin as a result of Twin's refusal to pay under Twin's excess Policy.

## II.     LEGAL STANDARD

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record,] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. The material in the record must be viewed in a light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

After the movant has met its burden under Rule 56(a), the burden of production shifts and

the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### III.   DISCUSSION

#### A.   Legal Obligation to Pay

In its Motion for Partial Summary Judgment, Twin asks the Court to enter partial summary judgment in its favor on Sun's claim for indemnity as to Sun's alleged settlement damages. Twin argues that the settlement damages are not a covered "Loss" under the Policy because Sun was not legally obligated to pay the settlement amount. Twin asserts that Sun did not fund any of the payments for the settlement amount and that, at most, Sun's liability was in the nature of a mere guarantee. In its Motion for Partial Summary Judgment, Sun asks the Court to enter partial summary judgment in its favor on the related but different issue of whether Twin may justify its alleged breach

under the Policy if Sun's legal obligation to pay was satisfied by a third party. Because the requests are related, the Court will handle these items in tandem.

        1.     Twin's summary-judgment motion: Sun's Legal Obligation to Pay

Under the Policy, Twin agreed to "pay[,] on behalf of the Insured Organization[,] Loss, which the Insured Organization is *legally obligated to pay* and which arises from any Claim first made against [Sun] during the Policy Period for a Wrongful Act." (DE 250-2, at 3 (emphasis added).) The underlying Settlement Agreement states, in relevant part, as follows:

> On the Closing Date (as defined in paragraph 14 below), on behalf of the Defendants, JDA Agent, LLC (the "Defendant Payment Agent"), shall pay, or direct the payment of, the aggregate sum of $166,000,000 (One Hundred Sixty-Six Million) to the Debtors' estates payable as follows: (a) the release of Sun Escrowed Funds to the Debtors' estates; (b) the release of the MDS Escrowed Funds to the Debtors' estates; and (c) cash from the Defendant Payment Agent to the Debtors' estates in an amount to be determined two Business Days prior to the Closing Date (defined below) based upon the amount of the Sun Escrowed Funds, and the amount of the "Administrative Discount" (as defined in paragraph 10 below and allocated in accordance with paragraph 11 below); (the payments referenced in (a) – (c) are, collectively, the "Settlement Payment"). The "Sponsor Defendants," shall be jointly and severally liable for the Settlement Payment and the Estate Parties shall have no recourse or claim against any individual Defendant other than the Sponsor Defendants for any portion of the Settlement Payment.

(DE 299-6, at 6-7 (footnote omitted).) It is undisputed that Sun is included in the definition of "Sponsor Defendants."

Under New York law,[2] "[a] settlement agreement is a contract which is subject to the ordinary rules of contract construction." *Texas 1845, LLC v. Kyaw*, 986 N.Y.S.2d 574, 576 (App. Div. 2014). "A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Sears v. Sears*, 30 N.Y.S.3d 770, 771 (App.

---

[2] The Settlement Agreement contains a choice-of-law provision that states that New York law shall apply. (DE 299-6, at 16.)

4

Div. 2016) (citation omitted). "When interpreting a contract . . . , the court should arrive at a construction that will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized." *Id.* (citation omitted). Furthermore, "[i]n adjudicating the rights of parties to a contract, courts may not fashion a new contract under the guise of contract construction." *Id.* (citation omitted). "A court should not, under the guise of contract interpretation, imply a term which the parties themselves failed to insert or otherwise rewrite the contract." *Bowman v. Bowman*, 14 N.Y.S.3d 69, 71 (App. Div. 2015) (citation omitted).

Based upon a reading of the plain and unambiguous language of the Settlement Agreement, the Court finds that the Settlement Agreement establishes Sun's obligation to pay. The Settlement Agreement establishes Sun's liability by way of the following provisions: (i) it establishes Sun's liability for the Settlement Payment through the clause that provides "the 'Sponsor Defendants,' shall be jointly and severally liable for the Settlement Payment"; (ii) it identifies the sources of payment that satisfy that liability in the first full sentence of the Settlement Payment paragraph and provides that "the payments referenced . . . are, collectively, the 'Settlement Payment'"; and, finally, (iii) it provides that Sun remains liable even if the sources of payment designated in the agreement are bypassed by the underlying plaintiffs (in favor of a direct demand against Sun)[3] or fall short for any reason through the clause that provides that "the Estate Parties shall have no recourse or claim against any individual Defendant other than the Sponsor Defendants for any portion of the

---

[3] The Court notes that if the underlying plaintiffs had refused to utilize the payment mechanism set forth in the agreement and attempted to pursue payment directly from Sun, Sun might have had a breach of contract claim against plaintiffs but nothing in the Settlement Agreement released Sun's legal obligation to pay.

5

Settlement Payment." (DE 299-6, at 6-7 (footnote omitted).) In the Court's review, these provisions collectively impose upon Sun a legal obligation to pay.

Despite this clear and unambiguous language, Twin argues that the settlement amount is not a covered Loss for two primary reasons: (1) the Settlement Agreement allegedly did not create an obligation for Sun to pay the settlement amount, and (2) Sun's obligation was allegedly in the nature of a guarantee that never ripened into a legal obligation. The Court is not persuaded by either argument.

First, the fact the Settlement Agreement identifies the sources of payment that satisfy Sun's liability does not mean that the Settlement Agreement does not create Sun's obligation to pay, even assuming *arguendo* for purposes of this Order only, that none of the payment sources enumerated in the agreement required direct payment from Sun. There is nothing in the Policy that requires Sun to pay the liability or suffer out-of-pocket loss as a condition to coverage. Rather, coverage applies under this liability Policy "as soon as the insured incurs the liability for the loss." *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) ("It is a general principle under insurance law, that the obligation to pay under a liability policy arises as soon as the insured incurs the liability for the loss . . . .").

Moreover, although the Settlement Agreement establishes three sources of payment, the Settlement Agreement specifically provides that Sun is jointly and severally liable for those payments and there is nothing in the Settlement Agreement that purports to release Sun from its liability absent full satisfaction of the settlement amount. On the contrary, the Settlement Agreement specifically provides that Sun remains responsible even if the closing does not occur or the payment sources fall short, by stating that "the Estate Parties shall have no recourse or claim against any

individual Defendant *other than the Sponsor Defendants* for any portion of the Settlement Payment." (DE 299-6, at 6-7 (emphasis added).) The Court reads this language as confirming Sun's ongoing liability to pay for any portion or amount of the Settlement Payment.

Twin's construction of the agreement would require the Court to focus on the payment provisions of the Settlement Agreement to the exclusion of the sentence establishing Sun's "joint[] and several[] liabil[ity]" and providing for recourse against Sun. (DE 299-6, at 6-7.) Such a construction of the agreement would violate New York law, which provides that an "interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible." *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (citing New York law) (internal citation and quotation marks omitted). The Court's reading of the Settlement Agreement, on the other hand, gives effect to the entire agreement.

Second, a reading of the plain language of the Settlement Agreement does not permit a characterization of Sun's obligation as a guarantee or contingent one.[4] The terms of the Settlement Agreement do not contain any words expressing that Sun's liability is in the nature of a guarantee or conditional on default of another. Nowhere in the Settlement Agreement is there any provision

---

[4] Under New York law, a guaranty is "the promise to answer for the payment of some debt or the performance of some obligation, on default of such payment or performance, by a third person who is liable in the first instance. . . . It is an obligation to answer for the debt of another." *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (applying New York law) (internal citation and quotation marks omitted). A guaranty "is a contract of secondary liability . . . Thus, a guarantor will be required to make payment only when the primary obligor has first defaulted." *Weissman v. Sinorm Deli, Inc.*, 669 N.E.2d 242, 246 (N.Y. 1996) (internal citation and quotation marks omitted). A guaranty is a promise to fulfill the obligations of another party, and is subject "to the ordinary principles of contract construction." *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 36 N.E.3d 80, 85 (N.Y. 2015).

that Sun will pay if another defaults on the Settlement Amount, and the Court cannot imply terms that are not there. *Bowman*, 14 N.Y.S.3d at 71.

The provision in the Settlement Agreement that directs JDA Agent, LLC ("JDA Agent"), a mere payment agent, to make the payments does not alter the fact that the Settlement Agreement imposes primary liability on Sun and the other Sponsor Defendants. Indeed, at oral argument, when Twin's counsel was asked who is primarily liable for the settlement damages if (as Twin has argued) the Sponsor Defendants are only secondarily liable, Twin's counsel could not identify a single entity or party who would be primarily liable for the settlement damages based upon Twin's proposed construction of the Settlement Agreement. Furthermore, it would be nonsensical to construe Sun's liability, which is expressly defined in the first instance by reference to the payment sources enumerated in the agreement, as contingent on those payments not being made. The express terms of the Settlement Agreement created Sun's liability, and, as discussed above, there is no basis for finding that Sun's liability was only secondary to any other person or entity.

For the reasons given above, the Court finds that Sun was legally obligated to pay the settlement amount, even though that obligation was allegedly satisfied by third-party sources pursuant to the terms of the Settlement Agreement. Because the Court concludes that Sun was legally obligated to pay under the plain terms of the Settlement Agreement, the Court must deny Twin's Motion for Partial Summary Judgment as to the issue of loss.

2. Sun's summary-judgment motion: Third-Party Payment

In its Motion for Partial Summary Judgment, Sun makes the closely related argument that Twin cannot justify its alleged breach based upon the alleged fact that someone other than Sun paid for the settlement amount. The Court agrees. Under the Policy, Twin agreed to "pay[,] on behalf

of the Insured Organization[,] Loss, which the Insured Organization is *legally obligated to pay* and which arises from any Claim first made against [Sun] during the Policy Period for a Wrongful Act." (DE 250-2, at 3 (emphasis added).) As the Court alluded to above, there is nothing in the language of this liability Policy that requires Sun to pay the loss to trigger coverage. Rather, coverage applies "as soon as the insured incurs the liability for the loss." *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) ("It is a general principle under insurance law, that the obligation to pay under a liability policy arises as soon as the insured incurs the liability for the loss, in contrast to an indemnity policy where the obligation is to reimburse the insured for a loss that the insured has already satisfied."). The alleged fact that Sun did not pay the liability is not a ground to excuse Twin's alleged breach of the Policy. As such, the Court must grant Sun's Motion for Partial Summary Judgment as to the first issue insofar as Sun asks for a ruling that Twin cannot justify its alleged breach based upon the assertion that someone other than Sun satisfied Sun's legal obligation to pay.[5]

**B.    Exhaustion**

In its Motion for Partial Summary Judgment, Sun requests a ruling that Twin may not challenge Houston Casualty Company's exhaustion of the primary policy limit on uncovered claims. Twin, however, argues that its liability under the Policy does not attach until after payment and

---

[5] Because the plain language of the Policy establishes that an insured need not have suffered actual loss to trigger coverage, the Court need not reach the issue of whether New York's collateral source rule applies. In addition, the Court notes that Sun has worded its request for partial summary judgment relative to this first issue in various ways throughout its briefs (and, for example, at times asks the Court to make a ruling that touches upon Twin's "liability"), but the Court intentionally confines its ruling to the issue of whether Twin can justify its alleged breach based upon the assertion that someone other than Sun paid Sun's legal obligation to pay. As discussed above, Twin cannot so justify its alleged breach.

exhaustion of the primary policy limit for covered "Loss" and since HCC allegedly paid defense expenses applicable to uncovered claims, Sun must pay the difference. Sun disagrees, arguing that Twin must pay under the excess Policy when the HCC policy limit is exhausted without regard to whether the losses for which HCC paid constitute covered "Loss."

Here, the parties' disagreement as to whether Twin can challenge HCC's exhaustion arises as a result of an alleged inconsistency between Endorsement No. 5 to the Policy, which replaced Section II(A), and existing Section II(B) of the Policy, which remains unchanged. To resolve the parties' disagreement, the Court first turns to the language of these provisions.

Endorsement No. 5, which is entitled "Exhaustion of Underlying Insurance," reads in relevant part as follows:

> It is expressly agreed that liability for any covered Loss shall attach to the Underwriters only after the Primary and Underlying Excess insurers or the Insured shall have paid the full amount of their respective liability for such **covered Loss**. If the Insured shall pay, in the applicable legal currency, any such covered Loss, then the Underwriters shall recognize such payment for the depletion of the respective limits of liability of the Underlying Insurance. In no way shall such payment by the Insured constitute a waiver of any terms, conditions or exclusions of the Underlying Insurance or this policy. The Underwriters shall then be liable to pay only such additional amounts up to the Limit of Liability set forth in Item C of the Declarations, which shall be the maximum liability of the Underwriters in each Policy Period.

(DE 250-1, at 14 (emphasis added).) The endorsement then states that "[a]ll other terms and conditions remain unchanged." (*Id.*)

The original Section II(A), before the alteration made by Endorsement No. 5, read as follows:

> It is expressly agreed that liability for any loss shall attach to the Underwriters only after the Primary and Underlying Excess insurers shall have paid the full amount of their respective liability (hereinafter referred to as the "Underlying Insurance") or the Insured(s) shall have paid the full amount of such liability due to the financial insolvency of an insurer of the Underlying Insurance. The Underwriters shall then be liable to pay on such additional amounts up to the Limit of Liability set forth in

10

> Item C of the Declarations, which shall be the maximum liability of the Underwriters in each Policy Period.

(DE 250-1, at 4.)

A comparison of the original policy text and the language in Endorsement No. 5 demonstrates that both provided, in relevant part, that Twin's liability would attach once the primary insurer paid the full amount of the primary insurer's liability, the difference being that the endorsement requires that those payments be for "covered Loss" before Twin's liability attaches while the original text triggered Twin's liability even if the primary insurer's payments were not for covered Loss.

There is no question that the Endorsement No. 5 replaced the original policy text in Section II(A), but the difficulty lies in reconciling that change with an unaltered provision in the policy that continues to refer to exhaustion of the primary insurer's liability limit by reason of "losses paid." Specifically, Section II(B) of the Policy provides as follows:

> In the event of the reduction or exhaustion of the aggregate limits of liability under the Primary and Underlying Excess Policy(ies) by reason of **losses paid thereunder** for claims first made while this policy is in force, this policy shall (1) in the event of such reduction, continue in force excess of the reduced Primary and Underlying Insurance, or (2) in the event of exhaustion, continue in force as primary insurance, subject to the Underwriters' Limit of Liability and to the other terms, conditions and exclusions of this policy, provided always that in the latter event this policy shall only pay excess of the retention/deductible applicable to such primary insurance as set forth in the Primary Policy, which shall be applied to any subsequent loss in the same manner specified in such primary insurance. Notice of exhaustion of Underlying Insurance shall be given the Underwriters upon such exhaustion. Nothing herein shall be construed to provide for any duty on the part of the Underwriters to defend any Insured or to pay defense or any claim expenses in addition to the Limit of Liability set forth in Item C of the Declarations.

(DE 250-1, at 4 (emphasis added).)

This Court agrees that there is a conflict between Endorsement No. 5 and Section II(B) of

11

the Policy. Endorsement No. 5 provides that liability attaches only when the underlying insurers have made payments for "Loss," while Section II(B) provides that the Twin Policy shall apply when the underlying insurer has made payments for "losses," which is not a defined term in the Policy and therefore encompasses uncovered losses. Notably, Endorsement No. 5 does not state that it replaces, alters, or nullifies Section II(B), but instead provides only that "Section II. . . A., is deleted and replaced." (*Id.*) Moreover, as noted above, the operative endorsement contains the language that "[a]ll other terms and conditions remain unchanged." (DE 250-1, at 14.) As such, the replacement of the word "loss" with the words "covered Loss" by virtue of Endorsement No. 5 for purposes of Section II(A) is clearly and unequivocally limited to Section II(A) and does not alter the words "losses paid" in Section II(B). *See Birnbaum v. Jamestown Mut. Ins. Co.*, 83 N.E.2d 128 (N.Y. 1948) ("It is equally true that if an indorsement attached to a policy expressly provides that it is subject to 'all the terms, limitations and conditions of the policy,' the policy and indorsement must be read together and an indorsement in such a case does not abrogate or nullify any provision of the policy unless so stated in the indorsement." (citation omitted)); *see also Response Pers., Inc. v. Hartford Fire Ins. Co.*, 812 F. Supp. 2d 309, 315 (S.D.N.Y. 2011) ("The Endorsement modifies the Policy by adding a supplemental "Insuring Agreement," but it does not replace, alter or even refer to the Policy's Discovery Clause. After listing additional provisions and terms which replace other sections of the Policy, the Endorsement explicitly states that '[a]ll other terms and conditions [of the Policy] remain unchanged.' [I]n construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect

12

except as altered by the words of the endorsement." (citation omitted) (applying New York law)).[6]

Neither party has presented the Court with any reasonable construction of the Policy that would reconcile the conflicting language in the Endorsement No. 5 with the language in Section II(B). It is well-established under New York law that an endorsement controls over a policy form to the extent that the endorsement is irreconcilably inconsistent with the form. *Murphy v. Allied World Assur. Co.*, No. 08 CIV. 3821 (GEL), 2009 WL 1528527, at *2 (S.D.N.Y. May 29, 2009) ("The New York Court of Appeals similarly held that an endorsement controls over a policy form to the extent that the endorsement is irreconcilably inconsistent with the form. *Birnbaum v. Jamestown Mut. Ins. Co.*, 298 N.Y. 305 (1948)."); *Pan Am. World Airways v. Port Auth. of New York & New Jersey*, No. 86 CV 938, 1988 WL 101337, at *5 (E.D.N.Y. Sept. 21, 1988) ( "[W]here there exists an 'irreconcilable conflict' between the terms of an endorsement and the terms of the policy, the language of the endorsement controls the policy's interpretation."); *Taylor v. Kinsella*, 742 F.2d 709, 711 (2d Cir. 1984) (applying New York law) ("As a general rule, where a certificate or endorsement states expressly that it is subject to the terms and conditions of the policy, the language of the policy controls.").

Sun argues that ambiguities should be resolved in favor of the insured. While that is a correct statement of the law, there is no ambiguity in Endorsement No. 5, and it is also true, and more directly relevant here, that under New York law when an endorsement and the body of a policy present an irreconcilable conflict, the endorsement controls. *Accord JCD Int'l Gem Corp. v. Evanston Ins. Co.*, No. 94 CIV. 5315 (MBM), 1995 WL 491337, at *2 (S.D.N.Y. Aug. 17, 1995)

---

[6] This Court previously determined that New York law applies to this breach of contract action. (DE 206.)

13

("Plaintiff asserts that under New York law, ambiguous terms of an insurance contract must be read in the light most favorable to the insured. Although this is an accurate general statement of the law, it is also true, and more directly relevant to the issue here, that where typewritten endorsements and printed standard contract language are in conflict, the typewritten endorsements, which are supposed to reflect terms negotiated between the parties, should be given effect.").

Because of the irreconcilable conflict in the Policy language between Endorsement No. 5 and unaltered Section II(B), the Court concludes that Endorsement No. 5 controls. As a result, the Court concludes that Twin's liability as an excess insurer only applies when the liability limit of the primary policy has been exhausted because the underlying insurer has made payments for "covered Loss" and therefore Twin can challenge HCC's exhaustion on the basis that certain payments were allegedly not for "covered Loss." Accordingly, Sun's Motion for Partial Summary Judgment is denied as to the exhaustion issue.

**C.    Allocation**

At oral argument, both parties indicated that they agree that some portion of the settlement damages are not recoverable because they relate to fraudulent conveyance claims that are deemed uninsurable under New York law. Twin's position is that Sun's costs incurred in defending the fraudulent conveyance claims are also not recoverable. In its Motion for Partial Summary Judgment, Sun, however, requests a ruling that the Policy does not allow for allocation of defense costs between uncovered and covered claims and therefore Twin must pay for all defense costs, even those incurred in the defense of the uninsurable claims.

The Court concludes that Sun's request is foreclosed by New York law. It is well-established under New York law, that under an indemnity policy, there is no obligation to indemnify defense

costs incurred in defending non-covered uninsurable claims. *Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*, 782 N.Y.S.2d 19, 20 (App. Div. 2004) ("The policy defines defense costs as a component of "Loss," which "shall not include matters which are uninsurable under the law pursuant to which this coverage section of this policy shall be construed. . . . Thus, defense costs are only recoverable for covered claims."); *Millennium Partners, L.P. v. Select Ins. Co.*, 882 N.Y.S.2d 849, 853 (Sup. Ct.) ("[D]isgorgement of ill-gotten funds is not insurable under the law because such disgorgement does not constitute damages or a loss as those terms are used in insurance policies. Moreover, where defense costs are a component of uninsurable loss, a party may not be reimbursed for those costs as they are only recoverable for covered claims." (internal citation and quotation marks omitted)), *aff'd*, 889 N.Y.S.2d 575 (App. Div. 2009*); see also* 70A N.Y. Jur. 2d Insurance § 2221 ("Where defense costs are a component of an uninsurable loss, a party may not be reimbursed for those costs as they are only recoverable for covered claims.").

Here, the Policy includes defense costs (and settlement damages) within the definition of "Loss," but specifically provides that "Loss" shall not include "matters deemed uninsurable under the law pursuant to which this Policy shall be construed."[7] (DE 250-2, at 30.) Under this Policy language and under the New York case law discussed above, to the extent that defense costs were incurred in defending non-covered uninsurable claims, Sun is not entitled to recover those costs. *Vigilant Ins.*, 782 N.Y.S.2d at 20; *Millennium*, 882 N.Y.S.2d at 853.

Sun's arguments to the contrary are availing. Sun's reliance on *Julio & Sons Co. v. Travelers Casualty and Surety Co.*, No. 08CV3001(RJH) (S.D.N.Y. Feb. 13, 2009) (applying Texas law) is

---

[7] Sun appears to concede that settlement damages are allocable between covered and uncovered uninsurable claims under the definition of "Loss."

trumped by the aforementioned New York case law. Further, Sun's reliance on the Allocation provision in the Policy is misplaced because, among other reasons, the Allocation provision does not apply to the allocation of costs between covered and uninsurable losses.

For these reasons, Sun's request for partial summary judgment is denied as to the issue of allocation.[8]

### D. Remaining Issues

As to the remaining issues raised by the parties in their cross motions, which pertain to indemnification and settlement, the Court finds that there are genuine disputes of material fact and therefore the motions are denied as to the remaining issues.

### IV. CONCLUSION

Based upon the foregoing, the Court concludes that Sun is entitled to partial summary judgment in Sun's favor on the first issue presented in Sun's motion: Twin cannot justify its alleged breach based upon the allegation that someone other than Sun satisfied Sun's legal obligation to pay. The cross Motions for Partial Summary Judgment as to the following issues are denied on the merits at this time: (1) Twin's request for entry of partial summary judgment in its favor on Sun's claim for indemnity under the Policy issued by Twin as to Sun's alleged settlement damages; (2) Sun's request for entry of partial summary judgment in its favor as to Twin's liability for costs incurred in the defense of the uninsurable claims; and (3) Sun's request for entry of partial summary judgment in it favor as to whether Twin can challenge HCC's exhaustion on the basis that the payments were allegedly not for covered loss. The cross Motions for Partial Summary Judgment are denied due to

---

[8] The Court does not reach the separate issue of the proper basis for allocation of defense costs at this time.

the presence of genuine issues of material fact on the following issues: (1) Sun's request for entry of partial summary judgment as to the consent-to-settle provisions; and (2) Twin's request for entry of partial summary judgment as to whether Sun increased Twin's exposure and/or released Twin's subrogation rights.

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff Sun Capital Partners, Inc.'s Motion for Partial Summary Judgment (DE 252) is **GRANTED** in part and **DENIED** in part, consistent with this opinion, and Defendant Twin City Fire Insurance Company's Motion for Partial Summary Judgment (DE 280) is **DENIED**.

In addition, the parties' related motions (DE 333, 335) are **DENIED** as moot. The unopposed motion to seal (DE 253) is **GRANTED**.

Within fourteen (14) days of the entry date of this Order, the parties shall confer and file with the Court a Joint Notice with proposed pretrial and trial dates for this action and 15-81361-CIV-MARRA.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 15th day of January, 2018.

KENNETH A. MARRA
United States District Judge