# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO. 12-81397-CIV-MARRA/MATTHEWMAN

SUN CAPITAL PARTNERS, INC.,

    *Plaintiff*,

v.

TWIN CITY FIRE
INSURANCE COMPANY,

    *Defendant.*
_____/

## TWIN CITY'S MOTION FOR RECONSIDERATION OF
## ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Joseph Ianno, Jr.
Florida Bar No. 655351
CARLTON FIELDS JORDEN BURT, P.A.
CityPlace Tower
525 Okeechobee Boulevard
Suite 1200
West Palm Beach, Florida  33401
Telephone:     (561) 659-7070
Facsimile:     (561) 659-7368
Email:  jianno@carltonfields.com

David M. Leonard (*admitted pro hac vice*)
Georgia Bar No. 446625
Justan C. Bounds (*admitted pro hac vice*)
Georgia Bar No. 339789
CARLTON FIELDS JORDEN BURT, P.A.
One Atlantic Center
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia   30309
Telephone:    (404) 815-3400
Facsimile:      (404) 815-3415
Email: dleonard@carltonfields.com
        jbounds@carltonfields.com

Matthew J. Conigliaro
Florida Bar No. 63525
CARLTON FIELDS JORDEN BURT, P.A.
4221 W. Boy Scout Blvd., Suite 1000
Tampa, Florida 33607
Telephone:     (813) 229-4254
Facsimile:     (813) 229-4133
Email: mconigliaro@carltonfields.com

***Attorneys for Defendant Twin City Fire Insurance Company***

**INTRODUCTION**

Defendant Twin City Fire Insurance Company ("Twin City") moves for reconsideration of the Court's January 16, 2018 Order on Cross Motions for Partial Summary Judgment (DE 349). This Motion addresses only the Court's conclusion that Sun Capital Partners, Inc. ("Sun") was, as a matter of law, "legally obligated to pay" $166 million to the plaintiffs in the underlying litigation based on the "joint and several liability" language in the Settlement Agreement.

Twin City appreciates the extraordinary nature of a motion for reconsideration, but, as demonstrated below, Twin City believes that this Motion is well founded and should be well taken. The Court reached its conclusion based in part on an argument that Sun did not raise—that Sun's obligation could not be a guaranty because, under New York law, a guaranty is a promise to pay upon the default of a primary obligor and the Settlement Agreement does not make JDA Agent, LLC ("JDA Agent") a primary obligor. DE 349 at 7-8 & n.4. That position is incorrect, however, and misapprehends Twin City's point, which is not that the Settlement Agreement made non-party (to that agreement) JDA Agent primarily liable and Sun secondarily liable. Rather, under the Settlement Agreement's terms, particularly when read together with the contemporaneously executed joint defense settlement agreement, the reference to the Sponsor Defendants' joint and several liability can reasonably be read only as a contingent obligation—applicable only in the event JDA Agent failed to tender the Settlement Payment to Cooley LLP on the contractually defined Closing Date as agreed by all parties to the joint defense settlement agreement (including JDA Agent).

The inconsistency between the Settlement Agreement's terms and the Court's interpretation of that agreement is reflected in footnote 3 of the Order. There, the Court stated that "if the underlying plaintiffs had refused to utilize the payment mechanism set forth in the

1

agreement and attempted to pursue payment directly from Sun, Sun might have had a breach of contract claim against plaintiffs but nothing in the Settlement Agreement released Sun's legal obligation to pay." DE 349 at 5 n.3. The Court thus recognized that, had the underlying plaintiffs sued Sun for the $166 million payment prior to the Closing Date, they would have done so in violation of the Settlement Agreement's terms, which required JDA Agent to tender the Settlement Payment and take other important actions on the Closing Date.

Simply put, the Settlement Agreement cannot have "legally obligated [Sun] to pay" the $166 million settlement amount prior to JDA Agent's tender on the Closing Date if, as the Court observed, demanding such a payment would violate the Settlement Agreement's terms and give rise to a breach of contract claim against the plaintiffs. The Court's reading of the Settlement Agreement is at odds with the document's language and, as such, is not reasonable.

In fact, even Sun does not contend that it was jointly and severally liable for $166 million. Sun's Motion for Partial Summary Judgment contended that Sun was liable for $143 million, a sum reached by reading the Settlement Agreement together with the separate joint defense settlement agreement—to which JDA Agent was a signatory and a party. *E.g.*, DE 250 at 9 ¶ 44 (stating "Sun entered into a global settlement with the Committee, incurring a joint and several obligation to pay $143,000,000.00 in a global settlement" and citing the Settlement Agreement, the joint defense settlement agreement, and an affidavit). Thus, at a minimum, multiple interpretations appear to be reasonable at this stage, and summary judgment is not appropriate at this time.

Twin City will now demonstrate these points in detail.

# LEGAL ARGUMENT

**I.     The Court Is Authorized To Reconsider The Order.**

The Court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981) (quoted in *Flintlock Constr. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1225 (11th Cir. 2013)). "Generally, the 'purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Inetianbor v. CashCall, Inc.*, 962 F. Supp. 2d 1303, 1307 (S.D. Fla. 2013). Indeed, this Court has stated, in an unpublished order, that reconsideration is an extraordinary remedy, to be employed sparingly, where "there is a need to correct clear error or prevent a manifest injustice." *Hess by McKenzie v. McNeil-PPC, Inc.*, 2010 WL 11504770, at *2 (S.D. Fla. Dec. 1, 2010) (Marra, J).

Respectfully, Twin City asserts that the Court's order is predicated on clear error. *See also Eveillard v. Nationstart Mortgage LLC*, 2015 WL 1191170, at *6 (S.D. Fla. Mar. 16, 2015) (Bloom, J.) (reconsideration is appropriate where the court has "patently misunderstood a party").

**II.    The Court Clearly Erred In Construing The Settlement Agreement To Make All Of The Sponsor Defendants, Including Sun, Legally Obligated To Pay The Plaintiffs $166 Million Prior To JDA Agent's Scheduled Payment On The Closing Date.**

In the January 16 Order, the Court read the Settlement Agreement in isolation and held that, under it, Sun was "legally obligated to pay" the underlying plaintiffs $166 million. The Court did so by rejecting Twin City's position that the Settlement Agreement's joint and several liability language was in the nature of a guarantee of JDA Agent's payment. The Court pointed out that, under New York law, a "guaranty is a promise to fulfill ***the obligations of another party***" or a "promise to answer for the payment of some debt or the performance of some

3

obligation, on default of such payment or performance, *by a third person who is liable in the first instance*," DE 349 at 7 n.4 (emphasis added) (quoting New York case law), and the Settlement Agreement does not make JDA Agent primarily liable to the underlying plaintiffs. But Twin City did not argue that the Settlement Agreement, standing alone, made Sun a guarantor under such case law, and Sun never argued that it was not a guarantor under such case law.

Rather, Twin City argued that Sun and the other 19 Sponsor Defendants effectively guaranteed JDA Agent's payment by taking on that liability should payment as required by the agreement on the Closing Date not be made. As does basic contract law generally, New York law recognizes that a contractual obligation may be contingent or conditioned on the occurrence or nonoccurrence of an event. *E.g.*, *William T. Bell & Assocs., LLP v. Pyramid Brokerage Co.*, 721 N.Y.S.2d 893, 894, 281 A.D. 2d 943 (N.Y. App. Div. 2001) ("Before liability can arise on a promise qualified by conditions expressed or implied in fact, those conditions must be fulfilled.") (quoting 22 N.Y. Jur. 2d Contracts, § 324); *see also Office of the Comptroller General of the Republic of Bolivia v. Int'l Promotions and Ventures, Ltd.*, 618 F. Supp. 202, 207 (S.D.N.Y. 1985) ("Fundamentally, the parties to a contract may condition the performance of either party . . . on the occurrence of an event."); Restatement (2d) of Contracts § 224 (1979). Under the Settlement Agreement, Sun and the other 19 Sponsor Defendants were liable to the underlying plaintiffs *only* in the event that JDA Agent failed to wire the full $166 million to Cooley LLP on the closing date, as required by the Settlement Agreement's plain terms. DE 70-1 at 5.

The Court addressed the view that Sun's liability was contingent on JDA Agent not making the required $166 million payment, but the Court expressly rejected that position on

4

grounds that "there is no basis for finding that Sun's liability was only secondary to any other person or entity." DE 349 at 8. That analysis confused the principle that secondary liability must follow primary liability with the principle that liability can be conditioned on the occurrence or nonoccurrence of an event. Contrary to the Court's reasoning, the fact that the Settlement Agreement, standing alone, did not create a direct obligation between JDA Agent and the underlying plaintiffs has no bearing on whether the Sponsor Defendants' joint and several liability was conditioned on JDA Agent not making the required payment.

Most importantly, the Settlement Agreement not only contemplated that the Settlement Payment would be tendered by JDA Agent on the Closing Date—the agreement required that outcome. DE 70-1 at 5. To hold that the plaintiffs could simply demand payment from the 20 Sponsor Defendants, including Sun, once the Settlement Agreement was executed—because they were legally obligated to pay—is irreconcilable with the agreement's complex and carefully negotiated closing requirements.

The January 16 Order acknowledged that inconsistency. The Court stated that "if the underlying plaintiffs had refused to utilize the payment mechanism set forth in the agreement and attempted to pursue payment directly from Sun, Sun might have had a breach of contract claim against plaintiffs but nothing in the Settlement Agreement released Sun's legal obligation to pay." DE 349 at 5 n.3. But the Settlement Agreement cannot have legally obligated Sun to pay the $166 million settlement amount prior to JDA Agent's payment on the Closing Date if, as the Court observed, the plaintiffs' demand for such a payment would amount to a breach of contract.

The Order also stated that "Twin[ City]'s construction of the agreement would require the Court to focus on the payment provisions of the Settlement Agreement to the exclusion of the sentence establishing Sun's 'joint[] and several[] liabil[ity]' and providing for recourse against

5

Sun," whereas "[t]he Court's reading of the Settlement Agreement, on the other hand, gives effect to the entire agreement." DE 349 at 7. Twin City submits that these two constructions, however, produce the opposite effects.

Twin City's construction gives meaning to every word of the Settlement Agreement. Twin City's construction defines the Sponsor Defendants' liability as arising if JDA Agent fails to tender the Settlement Payment on the Closing Date—hence, the use of the term "recourse" with respect to the Sponsor Defendants' liability.

Twin City's construction accounts for the fact that the Settlement Agreement was not effective upon execution. The agreement expressly required (1) the bankruptcy court's approval, DE 70-1 at 10, (2) the execution and escrow of numerous documents that were to be held by JDA Agent prior to the Closing Date and delivered by JDA Agent on the Closing Date pursuant to specific instructions, *id.* at 5-8, and (3) a subsequent agreement among the holders of certain claims to accept reduced distributions, *id.* at 9 & n.5.

Twin City's construction also accounts for the fact that the Settlement Payment was defined not as a fungible total sum but as a combination of assets. The agreement defined the Settlement Payment as (1) the Sun Escrowed Funds, (2) the MDS Escrowed Funds, and (3) "cash from the Payment Agent to the Debtors' estates in an amount to be determined two Business Days prior to the Closing Date . . . ." DE 70-1 at 4.

Finally, Twin City's construction accounts for the fact that the Settlement Agreement expressly stated that "the Sun Escrowed Funds ***shall not be released to the Debtors' estates until the Closing Date and upon the exchange of the Releases*** described in paragraph 9 . . . ." DE 70-1 at 6 n.3 (emphasis added). The Sun Escrowed Funds absolutely could not be transferred to

the plaintiffs—by JDA Agent or any Sponsor Defendant—until the Closing Date, when releases and other documents were also to be distributed.

The Court's construction, on the other hand, incorrectly treats the agreement as effective immediately. By its terms, as discussed above, it was not.

The Court's construction also fails to recognize that all 20 Sponsor Defendants were not jointly and severally liable for $166 million in cash—they were jointly and severally liable for the "Settlement Payment," which included the Sun Escrowed Funds, the MDS Escrowed Funds, and "cash from the Payment Agent . . . in an amount to be determined two Business Days prior to the Closing Date . . . ." None of those components was simply a cash amount. The Sun Escrowed Funds and the MDS Escrowed Funds were specifically identified assets, the first of which was not permitted to be "released" until the Closing Date and the exchange of numerous releases, and the third component was defined not merely as cash, but as "cash from the Payment Agent . . . ."

There is simply no reasonable way to read the Settlement Agreement as making anyone, most particularly Sun, liable for anything until the Closing Date, at which time JDA Agent, not the Sponsor Defendants, was to tender the Sun Escrowed Funds, the MDS Escrowed Funds, and cash "from the Payment Agent . . . ." The Settlement Payment was inextricably tied to the Closing Date and JDA Agent's actions on that date. The Court's contrary conclusion constitutes clear error.

Moreover, the Court's construction reads the Settlement Agreement in isolation, when, under New York law as well as basic contract law, "it is the general rule that written contracts executed simultaneously and for the same purpose must be read and interpreted together." *CooperVision, Inc. v. Intek Integration Tech., Inc.*, 794 N.Y.S.2d 812, 818 (N.Y. Sup. Ct. 2005).

7

Not even Sun advocates reading the Settlement Agreement entirely in isolation, as Sun describes the Sponsor Defendants' joint and several obligation as an agreement to pay $143 million—not $166 million—based on both the Settlement Agreement and the contemporaneously executed joint defense settlement agreement. DE 252 at 3 ("Sun, in reliance on the consent given, entered into a global settlement of the Underlying Litigation for $143 million, incurring a joint and several obligation to pay the full amount . . . ."); DE 252 at 5 ("[A]ny allocation must be of the full $143,000,000.00 for which Sun was jointly and severally liable as a result of the Settlement . . . ."); DE 250 at 9 ¶ 44 (stating "Sun entered into a global settlement with the Committee, incurring a joint and several obligation to pay $143,000,000.00 in a global settlement" and citing the Settlement Agreement, the joint defense settlement agreement, and an affidavit). It is indisputable that Sun relies on allocations set forth in the joint defense settlement agreement to reach the $143 million figure. *See, e.g.*, DE 280 at 7 n.6.

When the Settlement Agreement and the joint defense settlement agreement are read together, it is manifest that JDA Agent (which was a party to the latter) was obligated to make the $166 million payment through the assets identified in both agreements, and the Sponsor Defendants' joint and several obligation was contingent on JDA Agent failing to do so. The Court's contrary conclusion constitutes clear error.

Finally, to the extent that the Court maintains that the Settlement Agreement must be read in isolation and that, when that agreement's terms are reasonably construed, Sun obligated itself to pay $166 million when it executed the agreement, Twin City urges that its contrary interpretation is also reasonable, and summary judgment at this time would therefore not be appropriate. Further discovery would be necessary to determine the parties' intent, and Twin City should have the opportunity to show that the 20 Sponsor Defendants, including Sun, and the

8

underlying plaintiffs intended the Settlement Agreement to obligate the Sponsor Defendants to pay the Settlement Payment only if JDA Agent failed to do so as required on the Closing Date. Nevertheless, Twin City believes that when both agreements are read together, as required by New York law, the overall intent and proper construction is clear and unambiguous. Sun had no immediate obligation to pay under the Settlement Payment, and the contingent obligation never arose because JDA Agent tendered the Settlement Payment on the Closing Date as required by the Settlement Agreement and the joint defense settlement agreement.

WHEREFORE, Twin City respectfully requests that the Court grant reconsideration of the January 16 order, deny Sun's Motion for Partial Summary Judgment on Sun's obligation to pay, and hold either that Sun never became legally obligated to pay the underlying plaintiffs or that summary judgment on that issue is not appropriate at this time.

Respectfully submitted,

/s/ *Matthew J. Conigliaro*
Matthew J. Conigliaro
Florida Bar No. 63525
CARLTON FIELDS JORDEN BURT, P.A.
4221 W. Boy Scout Blvd., Suite 1000
Tampa, Florida 33607
Telephone:   (813) 229-4254
Facsimile:     (813) 229-4133
Email: mconigliaro@carltonfields.com

| | |
|---|---|
| Joseph Ianno, Jr. | David M. Leonard (*admitted pro hac vice*) |
| Florida Bar No. 655351 | Georgia Bar No. 446625 |
| CARLTON FIELDS JORDEN BURT, P.A. | Justan C. Bounds (*admitted pro hac vice*) |
| CityPlace Tower | Georgia Bar No. 339789 |
| 525 Okeechobee Boulevard | CARLTON FIELDS JORDEN BURT, P.A. |
| Suite 1200 | 1201 West Peachtree Street, Suite 3000 |
| West Palm Beach, Florida  33401 | Atlanta, Georgia   30309 |
| Telephone:   (561) 659-7070 | Telephone:   (404) 815-3400 |
| Facsimile:     (561) 659-7368 | Facsimile:     (404) 815-3415 |
| Email:  jianno@carltonfields.com | Email: dleonard@carltonfields.com |
| | jbounds@carltonfields.com |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, February 6, 2018, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List *via* transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Matthew J. Conigliaro*
Matthew J. Conigliaro